Brassard, J.
Plaintiff, Margaret Riebold (“Ms. Riebold”), brought this action against defendant, Eastern Casualty Insurance Company (“Eastern Casualty"), alleging employment discrimination on the basis of age and handicap, and retaliation for filing an MCAD charge, all in violation of G.L.c. 151B, §4. Defendant contends that the age and disability based discrimination claims are barred by the statute of limitations. Moreover, defendant contends that even if the court finds that these claims are not time barred, they should nonetheless be dismissed because (1) plaintiff has no reasonable expectation of proving a prima facie case of age or disability discrimination, and (2) plaintiff has no reasonable expectation of showing that defendant’s legitimate, non-discriminatory reasons for its employment actions were a pretext for age or disability discrimination. Lastly, as to the claim of retaliation, defendant contends that plaintiff has no reasonable expectation of proving that plaintiffs adverse employment action and termination were causally connected to the fact that she filed a complaint with the Massachusetts Commission against Discrimination (“MCAD”). For the reasons set forth below, defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
Viewing the facts in the light most favorable to the non-moving party, Ms. Riebold, the undisputed facts are as follows.
Ms. Riebold filed her first MCAD complaint on December 26, 1995 alleging age, disability and sex discrimination. On March 18, 1996, Ms. Riebold filed a second MCAD complaint alleging retaliation. On January 16, 1997, Ms. Riebold filed a seven-count complaint in Superior Court against Eastern Casualty and two of her supervisors, Michael O’Connor (“Mr. O’Connor”) and Thomas Ruggiero (“Mr. Ruggiero”). On February 26, 1997, plaintiff filed an amended complaint dropping one count and expanding the remaining six counts. On June 4, 1997, three of the six counts, the sex discrimination count and the counts against the two supervisors, were dismissed by the Court [6 Mass. L. Rptr. 706]. In February 1998, two months after her December 1997 termination, Ms. Riebold amended her complaint to allege wrongful termination to further support the three remaining counts, age discrimination, handicap discrimination, and retaliation. She supports these counts with the following facts.
On or about June 1988, Ms. Riebold was hired by Eastern Casualty as a Loss Control Consultant (“LCC”). At the time that she was hired, Ms. Riebold was 50 years old and a longtime diabetic. Eastern Casualty was not aware of Ms. Riebold’s diabetes at the time of her hire, but became aware of her condition soon after. When Ms. Riebold was hired Eastern Casualty employed two other loss control consultants; since June of 1988, Eastern Casualty has hired six additional loss control consultants, all but one of whom was less than thirty years of age. Ms. Reibold was the oldest LCC employed by Eastern Casualty.
The principal duties of an LCC involve frequent site visits to potential and existing policy holders, and analysis of their workers’ compensation risks. An LCC must analyze operations, identify potential workplace hazards, recommend corrective measures, and prepare reports for the underwriters evaluating those hazards. Eastern Casualty’s LCCs are highly mobile and autonomous. They are assigned individual accounts which they generally service alone, spending five days per week "on the road" visiting account locations in company cars provided by Eastern Casualty. Their reports to the underwriters are usually prepared after hours and at home.
On August 20, 1993, while driving a company automobile during working hours, Ms. Riebold had an insulin reaction which caused her to lose consciousness, veer off the road, hit some mailboxes, and undergo emergency hospitalization. On her first day of work following the accident, Ms. Riebold submitted a doctor’s note stating that while she was a “brittle diabetic,” she was able to drive a car and perform the regular duties of her job as long as she was able to eat on a regular basis. Over the next few weeks, Ms. Riebold engaged in numerous conversations with Eastern Casualty’s Human Resources personnel regarding the management of her diabetic condition.
*600 At the time of the accident, Ms. Riebold was operating under a New Hampshire driver’s license issued to her at a New Hampshire residential address. As a result of the accident, on October 18, 1993, Ms. Riebold attended a hearing before the State of New Hampshire Department of Safely. The Hearing Examiner concluded that Ms. Riebold has a medical condition which directly contributed to the accident on August 20, 1993 and thus entered an order authorizing her “to hold only a probationary license," subject to certain terms and conditions. Ms. Riebold never informed Eastern Casualty of the hearing or the probationary status of her driver’s license.
In her first MCAD complaint filed on December 26, 1995, Ms. Riebold contends that after the accident, Eastern Casualty became overbearingly involved in the treatment and care of her diabetic condition. Moreover, she also asserts that she received declining evaluations after the accident and consequently did not receive yearly pay raises. Ms. Riebold also alleges that she was excluded from training seminars that younger LCCs were allowed to attend and that her requests for training material in the possession of a younger LCC went unanswered. Aside from these general contentions, Ms. Riebold also cites many specific incidents to support her age and disability discrimination claims (December 26, 1995 MCAD complaint).
In November 1993, Ms. Riebold was informed that there was a Christmas party to be hosted by one of Eastern Casualty’s clients, an agency with which Eastern Casualty did a substantial volume of business. Ms. Riebold was not invited to the party and those Eastern Casualty LCCs who were invited to the party were younger than Ms. Riebold. Ms. Riebold contends that she had significant contact with the agency and that she was the only LCC not invited to the party.'
On November 18, 1993, Ms. Riebold and Mr. O’Connor, one of her supervisors, were involved in a verbal altercation in which Mr. O’Connor accused Ms. Riebold of lying to one of his superiors. This argument took place in front of some Underwriting Department employees, thus causing Ms. Riebold to feel “disparaged, demeaned, and humiliated.” Ms. Riebold has never observed Mr. O’Connor treat any other employees in this manner. Ms. Riebold was also humiliated at Loss Control meetings by her other supervisor, Mr. Ruggiero. On one occasion, when talking about “big” accounts that other LCCs were handling, he turned to Ms. Riebold and stated “Margaret can do the Dunkin Donuts.”
In late 1993 or early 1994, Eastern Casualty divided the job of LCC into two grades, LCC I and LCC II. While their primary duties are the same, an LCC I focuses on hotel and restaurant accounts, and an LCC II focuses predominantly upon the more technical general market accounts. Because LCC II requires greater technical expertise in risk evaluation, LCC II employees are eligible for a slightly higher salary range. Ms. Riebold was assigned to the LCC I category. Soon after the establishment of these two categories, Ms. Riebold expressed dissatisfaction with not being assigned to the LCC II category.
In May 1995, Ms. Riebold was involved in a second automobile accident while operating a vehicle leased by Eastern Casualty. The accident occurred when Ms. Riebold struck a concrete curb that could not be seen and resulted in property damage to Ms. Riebold’s car only. In June 1995, plaintiff was involved in a third accident while operating a vehicle leased by Eastern Casualty. The accident resulted in property damage to Ms. Riebold’s car in the amount of $618.72.
In October 1995, Eastern Casualty refused to allow Ms. Riebold to return to work after an absence due to illness until she provided a doctor’s note authorizing her return to work and confirming her ability to drive an automobile. Eastern Casualty’s Personnel Policy Handbook (“Handbook”) had initially required any employee absent for five days due to illness to obtain a doctor’s release before returning to work. In 1993, this requirement had been shortened to three days in conformity with the Family and Medical Leave Act (“FMLA”). This policy change was not indicated in the Handbook. Ms. Riebold provided the note and returned to work without loss of pay.
In November 1995, Ms. Riebold began what would ultimately turn out to be a ninety-day medical leave of absence under the FMLA. Ms. Riebold’s physician, E. Russell Young, D.O. (“Dr. Young") provided Eastern Casualty with a certification which identified “uncontrolled diabetes mellitus” as the serious health condition justifying FMLA leave. On December 26, 1995, while on medical leave, Ms. Riebold filed her first complaint with MCAD alleging age and handicap discrimination by Eastern Casualty.
Ms. Riebold returned to work at Eastern Casualty on February 5, 1996. Upon her return to work, Ms. Riebold provided Eastern Casualty with a note signed by Dr. Young which stated:
Margaret Riebold may return to work [sic] February 5, 1996 with the following restrictions:
1. Work day limited to no more than eight hours
2. Driving radius limited to 200 miles per day
3. Time should be provided for preparation and completion of reports
4. “On the road” travel would [sic] be limited to four days per week.
During the period when the restrictions were in effect, Ms. Riebold contends that Eastern Casualty chose to interpret these requirements in a manner which made her job more burdensome. For example, she worked out of the central office and was asked to sign in and out daily. This procedure required Ms. Riebold to report to the office prior to attending her scheduled *601 appointments, thus increasing her driving time, requiring her to drive unnecessary mileage, and consequently affecting her overall productivity.
In a letter dated March 8, 1996 sent to Mary Jane Peoples (“Ms. Peoples”), then Eastern Casualty’s Human Resources Director, Dr. Young stated (i) that Ms. Riebold’s medical condition was recently significantly improved, (ii) that Ms. Riebold no longer felt that she needed any significant work restrictions, and (iii) that the restrictions should be removed and Ms. Riebold be allowed to resume her usual job description. In March 1996, upon receipt of Dr. Young’s letter, Ms. Riebold resumed her usual job duties as an LCC without restrictions.
On March 18, 1996, Ms. Riebold filed a second charge of discrimination against Eastern Casualty with the MCAD, alleging that certain conduct of Eastern Casualty was in retaliation for her having filed the first MCAD charge.
In October 1996, Ms. Riebold met with Eastern Casualty’s President, James A. Radley (“Mr. Radley”) to discuss her concerns and press for assignment to the LCC II category. During the meeting, although not specifically discussing the issue of whether Eastern Casualty had “discriminated” against her because of her sex or age, Mr. Radley did state that Eastern Casualty had treated Ms. Riebold differently because of her disability, in that it had made “special efforts to take care of her.” Following this meeting, Ms. Riebold was given an opportunity to conduct LCC II assignments of general market accounts, on the condition that she meet the same performance standards applicable to all LCC IIs.
Ms. Riebold’s evaluation for the period in which she was an LCC II dated September 3, 1997 stated in pertinent part:
[Ms. Riebold] has dropped below what would be considered company standards for complete, informative Loss Control reports . . . neither I nor the underwriters can depend on the information she is providing to us in regards to areas such as industrial hygiene exposures, machine guarding exposures, or the many other exposures presented by the varied contractors we are surveying and servicing. She is not adequately performing the tasks that are required of a Loss Control Consultant II.
Based on this evaluation, Ms. Riebold did not receive a pay increase.
On October 10, 1997, Ms. Riebold was scheduled to perform an overdue service call on an account located within her service area, in Franklin, MA. Ms. Riebold had not visited the account since November 6, 1996. Because of its large premium size and known loss control problems, the account had been placed on a six-month servicing schedule. Efforts to complete the bi-annual service call had been repeatedly unsuccessful because of scheduling problems. On the day of the scheduled visit, Ms. Riebold followed the wrong schedule and appeared at another Eastern Casualty account in Dedham, thus missing the long scheduled appointment in Franklin.
On November 20, 1997, Ms. Riebold conducted a pre-survey of a large potential general market account introduced by one of Eastern Casualty’s largest agency clients. Ms. Riebold was accompanied by her supervisor and by agency representatives. After the pre-survey, the agency client informed Eastern Casualty that it was “disappointed as to how badly the inspection” went and that “(o]ur client was so irritated by the inspection protocol, you will not have the opportunity to quote the account.” Both Eastern Casualty and its client agency lost the account. On December 8, 1997, Eastern Casualty terminated Ms. Riebold’s employment.
As of the date of the filing of Ms. Riebold’s original Superior Court complaint against Eastern Casualty (January 16, 1997), Eastern Casualty had one hundred and forty-two employees on its workforce, 37% of whom were over forty, 20% were over fifty, 3% were over sixty, and 1% was over seventy. Of the twenty-two employees who made up the management ranks, 68% were over forty. Of the thirteen Supervisors, 54% were over forty, of the three Managers, 100% were over forty, and of the six Directors, 100% were over forty. Additionally, as of January 1997, twelve Eastern Casualty employees had known disabilities, three of these were diabetic, and two of those with diabetes were over forty years old. In the two years that have elapsed since the filing of the original complaint, the percentage of Eastern Casualty employees who are over forty or who have disabilities has risen.
On January 16, 1997, Ms. Riebold filed a seven-count complaint in Superior Court against Eastern Casualty and two of her supervisors, Mr. O’Connor and Ruggeiro. On February 26, 1997, plaintiff filed an amended complaint dropping one count and expanding the remaining six counts. On June 4, 1997, three of the six counts, the sexual discrimination count and the counts against the two supervisors, were dismissed by the Court. In February 1998, two months after her December 1997 termination, Ms. Riebold amended her complaint to allege wrongful termination to further support the three remaining counts, age discrimination, handicap discrimination, and retaliation.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and where the moving party is entitled tojudgmentas a matter oflaw. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Cassesso v. Comm'r of Corrections, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 368 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue and *602 that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). If the moving party establishes the absence of a triable issue, in order to defeat the motion for summary judgment, the opposing party must respond and allege specific facts which would establish the existence of material fact. Id.
I. Statute of Limitations
The present motion requires the court to first determine whether the incidents which form the basis for plaintiffs claims of discrimination are barred by the applicable statute of limitations. G.L.c. 151B, §5 provides that “any complaint filed pursuant to this section must be so filed within six months after the alleged act of discrimination.” Thus, failure to file a timely charge of discrimination bars a party from bringing a c. 15 IB, §5 discrimination action in court. Treadwell v. John Hancock Mutual Life Ins. Co., 666 F.Sup. 278, 282 (D. Mass. 1987).
Ms. Riebold filed the first complaint with MCAD on December 26, 1995, alleging age and disability discrimination arising out of incidents dating as far back as August 1993. Specifically, seven of the fourteen incidents that Ms. Riebold now relies upon in support of her claims occurred more than six months before December 26, 1995, one incident arguably occurred within the six-month statute of limitations, and the remaining six occurred after the filing of the MCAD complaint. For the purposes of this motion, the court will approach each cluster of incidents separately.
a) Seven Incidents Occurring Prior to June 26, 1995
G.L.c. 151B provides two largely independent avenues for redress of violations of the anti-discrimination laws of the Commonwealth, one through the MCAD and the other in the courts. Charland v. Muzi Motors, Inc., 417 Mass. 580, 583 (1994) citing Christo v. Edward G. Boyle Ins. Agency, Inc., 402 Mass. 815, 817 (1988). However, under G.L.c. 151B, §9, a person claiming discrimination “may maintain a civil action only if she has previously filed a timely complaint with the [MCAD] and ninety days have passed.” Charland, supra. Resort to the court is not available for a complaint of discrimination within the jurisdiction of the MCAD unless the person claiming to have been the object of unlawful discrimination first makes a timely complaint to that agency. Id.
The plain meaning of this rule clearly bars Ms. Riebold from using the incidents that occurred prior to June 26, 1995 to support her claims of discrimination; however, this six-month statute of limitations does not apply when the unlawful conduct complained of is of a continuing nature, 804 Code Mass Regs. 1.03(2); Lynn Teachers Union, Local 1037 v. Massachusetts Commission against Discrimination, 406 Mass. 515, 520 (1990); Provencher v. CVS Pharmacy, Div. of Melville Corp., 145 F.3rd 5, 14 (1st Cir. 1998); Sabree v. United Both of Carpenters and Joiners, 921 F.2d 396, 400 (1st Cir. 1990). The continuing violation theory saves an otherwise time-barred claim if the plaintiff can show a number of discriminatory acts emanating from the same discriminatory animus, each action constituting a separate wrong under G.L.c. 151B. See Lynn Teachers Union, supra; Provencher, supra; Sabree, supra. For the continuing violation doctrine to apply, there must have been some violation within the statute of limitations period that anchors the earlier claims. Provencher, supra.
Furthermore, before a plaintiff can reach back and recover for a series of acts outside the limitations period, he must prove a substantial relationship between the acts. Sabree, supra at 401. The most important factor to be considered in determining whether a substantial relationship exists is whether the act outside the limitations period has “the degree of permanence which should trigger an employee’s awareness and duty to assert his or her rights.” Desrosiers v. The Great Atlantic and Pacific Tea Company, Inc., 885 F.Sup. 308, 312 (D.C. Mass 1995). Permanence is an inquiry into what the plaintiff knew or should have known at the time of the discriminatory act. Id. If the untimely act has the requisite degree of permanence then it is not substantially related to the act which occurred within the limitations period and there can be no continuing violation. Id.
Thus, even where a plaintiff alleges a violation within the appropriate statute of limitations period, the continuing violation claim will fail if the plaintiff was or should have been aware that he was being unlawfully discriminated against when the earlier acts, now untimely, were taking place. Provencher, supra. A knowing plaintiff has an obligation to file promptly or lose his claim. Sabree, supra at 402. Such a requirement preserves the policy behind the limitations period, namely, guaranteeing the protection of the civil rights laws to those who promptly assert their rights while also protecting employers from the burden of defending claims arising from employment decisions that are long past. Sabree, supra at 401.
In Sabree, the court rejected the plaintiffs continuing violation claim because the plaintiff admitted that he believed, at every turn, that he had been discriminated against. Supra at 402. The court reasoned that the purpose of the continuing -violation doctrine is to protect the plaintiff who is unable to appreciate that he is being discriminated against until he has lived through a series of acts and is thereby able to perceive the overall discriminatory pattern. Provencher, supra at 15.
Like the plaintiff in Sabree, Ms. Riebold has essentially acknowledged that, at the time that the incidents occurred, she believed that they were discriminatory in nature. During her deposition, Ms. Riebold admitted that she began keeping notes about events that took place at work after the 1993 car accident (Dep. 195-21). She also stated that, through 1996, she *603 continued to take notes as the events occurred so that she would remember them (Dep. 94-7). Further evidence that she knew that the incidents were discriminatory in nature as early as 1993 includes a letter entitled "Summary,” written on November 17, 1993, in which Ms. Riebold writes: “It is my total belief from the information given, that the attached information is evidence of both discrimination from disability and age. Due to this discrimination, I also believe total and complete harassment is being committed in an effort to make me retire from my job.” Moreover, on May 13, 1994, Ms. Riebold submitted a memorandum to her supervisor which acknowledged that she believed that “everything began to change” after the automobile accident in 1993. In this memorandum, Ms. Riebold set forth many of the incidents that currently form the basis of her claims of discrimination.
The continuing violation claim must fail because, in light of Ms. Riebold’s acknowledgment of her awareness of the nature of the earlier acts, she was, or at least should have been, aware that she was being unlawfully discriminated against when the earlier acts, now untimely, were taking place. Provencher, supra at 14. Ms. Riebold, as a knowing plaintiff, had an obligation to file promptly or lose her claim. Sabree, supra at 402. Because she did not file within the six-month statute of limitations and these past acts do not constitute continuing violations, the seven acts occurring prior to June 26, 1995 must be dismissed.
b) Incident Arguably Occurring within Applicable Time Frame
The one incident that arguably occurred within the six-month statute of limitations is Eastern Casualty’s refusal to allow Ms. Riebold to return to work after taking three days off unless she obtained a work release and a confirmation of her ability to drive from her physician. Eastern Casualty contends that this incident occurred in January 1995 and is therefore barred by the six-month statute of limitations. Ms. Riebold alleges that Eastern Casualty is relying on a clerical error in plaintiffs answers to interrogatories and that the incident actually occurred in October 1995. If plaintiffs time frame is correct then this incident would not be barred by the statute of limitations. Because there is a dispute of material fact regarding the date of this incident, summaxyjudgment is inappropriate on the basis of the statute of limitations.
c) Incidents Occurring After December 26, 1995
The remaining six of the fourteen incidents relied upon by Ms. Riebold in support of her allegations of discrimination occurred after the first MCAD complaint was filed in December of 1995 but before the Superior Court complaint was filed in January of 1997. Under G.L.c. 151B, §5, a complaint of discrimination must be filed with the MCAD within six months after the alleged incident. Further, G.L.c. 151B, §9 states that “any person claiming to be aggrieved by a practice made unlawful under this chapter . . . , may at the expiration of ninety days after the filing of a complaint with the commission . . . , bring a civil action for damages or injunctive relief or both in superior [court].” The question is whether it was necessary for Ms. Riebold to amend the MCAD complaint in order to include the additional, post MCAD complaint incidents in the Superior Court complaint filed pursuant to G.L.c. 151B, §9.
Massachusetts courts are under a statutory mandate that G.L.c. 151B “be construed liberally for the accomplishment of the purposes thereof.” G.L.c. 151B, §9; Smith v. Mitre Corp., 949 F.Sup. 943, 948 (D.Mass 1997). The purpose of the administrative procedure is to give the agency an opportunity to conciliate the claim and avoid a civil suit. Id. The Federal District Court in Massachusetts, although never addressing this precise issue, has determined that refiling with MCAD is unnecessary in the context of a retaliation charge. Id. In allowing the plaintiff to sustain her retaliation claim absent the filing of an additional MCAD complaint, the court in Smith reasoned that when a plaintiff brings a civil action for retaliation in addition to her discrimination claim originally presented to the MCAD, it means that the MCAD had not resolved the original claim and that plaintiff now claims that defendant is taking further wrongful actions in specific response to the original complaint. Supra. Consequently, to dismiss the retaliation complaint would be to choose form over substance. Id. Moreover, to demand a separate MCAD filing would not only increase the plaintiffs litigation expenses, but it would also delay final resolution of the claim, as the plaintiff would be compelled to wait to bring one comprehensive lawsuit until each part of her claim clears the 90-day administrative hurdle required under G.L.c. 151B, §9. Smith, supra at 428.
This federal authority stands for the proposition that it is not necessary for a plaintiff to exhaust administrative remedies before she can bring to court a retaliation claim not previously made known to the administrative agency, but arising out of a charge filed earlier with that agency. Carter v. Commissioner of Corrections, 43 Mass.App.Ct. 212, 218 (1997). In Carter, the Massachusetts Appeals Court, although not making a decision regarding whether such an amendment is required in that particular case, stated that the federal decisions (including Smith} which discuss this issue are persuasive, thus indicating a willingness by the Massachusetts courts to follow this federal precedent.
The present issue does not involve a retaliation claim, but rather, it involves the addition of several incidents which Ms. Riebold offers to support the claims of age and disability discrimination previously filed with MCAD.[1] This court concludes, however, that the reasoning of Smith and Carter are applicable here.
*604 The additional six incidents that plaintiff purports to offer in support of her age and disability discrimination claims relate to the subject matter of the original MCAD complaint. One of the primary purposes of the requirement that a plaintiff file a complaint with the MCAD prior to filing in Superior Court, G.L. 151B, §5, is to put the employer on notice of the scope of the potential action that can be brought under G.L. 151B, §9. Carter, supra at 220. The complaint that Ms. Riebold filed with MCAD on December 26, 1995 certainly put Eastern Casualty on notice of the age and disability discrimination claims against it. Accordingly, because Eastern Casualty was apprised of the claims against it, the additional incidents that Ms. Riebold included in her Superior Court complaint do not compromise its ability to formulate a defense.
Moreover, another purpose of the administrative procedure is to give Eastern Casualty the opportunity to reconcile the claim and avoid a civil suit. Smith, supra at 948. Again, allowing Ms. Riebold to include in her Superior Court complaint the incidents which occurred after the filing of the first MCAD complaint does not run counter to this purpose. The first complaint afforded the parties an opportunity to resolve their differences. Finally, requiring Ms. Riebold to refile with the MCAD prior to instituting an action in Superior Court would increase her litigation expenses and delay final resolution of the claims. Thus, by allowing Ms. Riebold to include these additional incidents in her Superior Court complaint, this court ensures judicial economy and convenience without threatening the fairness of the process. See G.L. 151B, §§5 and 9; Smith, supra at 948. These principles apply even though, in this instance, Ms. Riebold went back to the MCAD in March 1996 and filed a second claim alleging retaliation. She certainly could have included five of these six claims in the second complaint.[2] To some extent, this weakens her posture but nonetheless, for the aforementioned reasons, the same principles apply.
II. The Merits of Ms. Riehold’s Discrimination Claims
In ruling on a motion for summaiy judgment, “a judge must consider the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any in determining whether summary judgment is appropriate." Flesner v. Technical Communications Corp., 410 Mass. 805, 808 (1991). The burden is on the moving party to show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. Where a moving party properly asserts that there is no genuine issue of material fact, “the judge must ask himself not whether he thinks the evidence unmistakably favors one side over the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented.” Id. at 809.
To survive summaiy judgment, the plaintiff carries the initial burden of establishing a prima facie case of age or disability discrimination on the basis of the seven incidents which are not barred by the statute of limitations. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). The facts necessary to establish a prima facie case differ depending on the circumstances of each case. Beal v. Board of Selectman of Hingham, 419 Mass. 535, 540-41 (1995). In order to establish a prima facie case of unlawful employment discrimination on the basis of age or disability pursuant to G.L.c. 151B, plaintiff must present some evidence that (1) she is a member of a class protected by G.L.c. 151B; (2) she has performed her job at an acceptable level; (3) she was terminated or otherwise subjected to adverse employment decisions.[3] Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995). Once the plaintiff meets this burden, unlawful discrimination is presumed. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 128 (1997).
The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision and to produce credible evidence to show that the reason or reasons advanced were the real reasons. Matthews, supra quoting Wheelock College v. Massachusetts Comm’n Against Discrimination, 371 Mass. 130, 136 (1976). The defendant’s burden of production is not onerous, because even if the reason given for its employment decision is unsound and the action appears “arbitrary or unwise,” the defendant has nonetheless met its obligation. Matthews, supra citing Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 766-68 (1986). There is no requirement that defendant prove to the fact finder that it was correct in its belief Matthews, supra.
Once the defendant meets this burden, the presumption of discrimination disappears and the burden shifts back to the plaintiff to convince the court, by a fair preponderance of the evidence, that defendant’s reason for its employment decision was not real, but rather a pretext for discrimination. Id. The plaintiff bears the burden of persuasion on the ultimate issue of discrimination and therefore must provide evidence that would be sufficient to support a juiy verdict that it is more likely than not that the reason for the employment decision offered by defendant is a pretext for actual discrimination. Id. If the defendant’s reasons are not discriminatory, and if the plaintiff does not prove that they are pretexts, the plaintiff cannot prevail. Id. With respect to summary judgment, it follows that, if a plaintiff has produced credible evidence sufficient to support a prima facie case of discrimination, and has further offered evidence sufficient to support a determination either that the employer’s reason was a pretext or that the actual reason for the adverse employment decision was discrimination, summary judgment for the defendant is inappropriate. Blare, supra at 445.
*605 For the purposes of this motion, Eastern Casualty admits that Ms. Riebold is over age 40 and disabled, thus qualifying as a member of protected classes pursuant to G.L.c. 151B. To promote clarify, this court will analyze each of the seven incidents individually to determine whether the merits of Ms. Riebold’s claims of age discrimination and disability discrimination survive summary judgment.
1)Ms. Riebold’s Declining Performance Reviews (1993-1997)
Ms. Riebold contends that after the car accident, her performance appraisals declined. Ms. Riebold asserts that these incidents are evidence of disability discrimination (Answers to Intern 6D). Ms. Riebold has established a prima facie case of discrimination if she is able to show that she was performing at an acceptable level and that she was subject to an adverse employment decision.
Assuming that Ms. Riebold has established a prima facie case of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision and to produce credible evidence to show that the reason or reasons advanced were the real reasons. Matthews, supra quoting Wheelock College, supra at 136. Eastern Casualty has presented evidence that Ms. Riebold received poor performance evaluations both before and after the 1993 car accident which Ms. Riebold contends precipitated the discriminatory treatment. In fact, from 1988-1992, Ms. Riebold’s job performance ranking placed her last among Eastern’s three LCCs (O’Connor Aff. 24). In her first evaluation, dated January 11,1989,[4] her supervisor wrote the following:
1) Margaret’s surveys are lacking in detail — too general, need specifics;
2) she needs to work harder at adapting to company procedures and philosophies;
3) cooperation is not at a desired level — not a “team” player;
4) her surveys leave questions unanswered, the underwriters are not confident of her reports.
(1989 Evaluation; O’Connor Aff. 24.)[5] Although her evaluations may have declined, there is no evidence that it was not warranted by a continual decline in her job performance.
Once Eastern articulates a nondiscriminatoiy reason for the adverse employment decision, the burden shifts back to Ms. Riebold to convince the court, by a fair preponderance of the evidence, that defendant’s reason for its employment decision was a pretext. Matthews, supra. Ms. Reibold has not offered any evidence to show that Eastern Casualty’s stated nondiscriminatoiy reasons for her poor evaluations were a pretext. Therefore, this incident does not survive summary judgment.
2)Denial of Wage Increases (1993-1997)
Ms. Riebold alleges that she was denied salary increases from 1993 to 1997 and that, unlike other LCCs, she was not given a regular 4% increase in 1996 (Answers to Interrogatories p.8, 5E and 5F). Ms. Riebold contends that these are incidents of both age and disability discrimination because other younger, non-disabled LCCs were given wage increases during this period.
Assuming that Ms. Riebold has established a prima facie showing of discrimination, the burden shifts to the defendant to articulate a legitimate, nondiscriminatoiy reason for its employment decision and to produce credible evidence to show that the reason or reasons advanced were the real reasons. Matthews, supra quoting Wheelock College, supra at 136. According to Eastern Casualty, wage increases for a given year are based upon an employee’s evaluation and cumulative point totals for the prior year (Ms. People’s Aff. 6). Thus, based on the evaluations and point system, Ms. Riebold’s performance did not merit a wage increase (O’Connor Aff. 24, 26-29, 35, 42-45, 50).
Even if Ms. Riebold did establish a prima facie case of discrimination based on Eastern Casualty’s denial of wage increases, she must now convince the court, by a fair preponderence of the evidence, that Eastern Casualty’s stated reasons for denying Ms. Riebold’s wage increases were a pretext. Matthews, supra. Ms. Riebold has not met this burden. In fact, she admitted that she “never specifically asked” anyone at Eastern Casualty why others were promoted over her (Dep. 25-10). Moreover, Ms. Riebold stated that the denial of the 4% pay increase was discriminatory because “it just followed the pattern” (Dep. 127-12). In light of her record of poor performance, Ms. Riebold presents no evidence, other than her subjective beliefs,[6] that would be sufficient to convince a reasonable juiy that Eastern Casualty’s stated reasons for denying Ms. Riebold’s wage increases were a pretext. (O’Connor Aff. 24, 26-29, 35, 42-45, 50.) Because Ms. Riebold does not provide evidence to show that Eastern Casualty’s stated employment decision was a pretext, this incident does not survive summary judgment.
3)Exclusion from Training Seminars (1993-1997)
Ms. Riebold alleges that she was not given the opportunity to attend training seminars until after the complaint was filed with the MCAD. (Dep. 89-4.) Moreover, she states that her request for training material in the possession of a younger LCC was not answered and younger LCCs were asked to attend training seminars. Ms. Reibold contends that these exclusions are evidence of both age and disability discrimination because younger, non-disabled employees were allowed to go to these training seminars ahead of her.
*606 Specifically, Ms. Riebold contends that on her performance evaluation for the year 1993, she was advised that she would need to attend a seminar on Machine Guarding (Answers to Interr. 5D). An LCC II employee who was younger than Ms. Riebold attended the seminar in August 1994 and Ms. Riebold was not allowed to attend until February 1995 (O’Connor Aff. 28, 33).
Even if Ms. Riebold has established a prima facie showing that these incidents constitute discrimination, she is nonetheless unable to show that Eastern Casualty’s stated non-discriminatoiy reasons are a pretext. Eastern Casualty was asked by another LCC II to be sent to the August 1994 course. Once Ms. Riebold learned that another LCC was given authorization to attend the August course, she submitted a request. The request was granted; however, because of Eastern Casualty’s policy of granting requests on a first-come, first-serve basis,[7] Ms. Riebold was not given authorization to attend that particular course but instead had to attend the February 1995 Machine Guarding course (O’Connor Aff. 31, 33).
When asked why this explanation was a pretext, Ms. Riebold stated that:
I think because Rick Muller was a young male. So it was OK for him to take the course. I think I was an older female at the time, and for whatever reason, they are saying that I need all this education, but they are not making any means to provide it for me. So what is the reason that they are not making, it was a conclusion on my part, that I was not allowed to attend the training seminar. (Dep. 46-11.)
Such subjective, conclusory statements are insufficient to satisfy Ms. Riebold’s burden of establishing pretext. See Polaroid, supra. Ms. Riebold cannot meet her burden of convincing a reasonable jury that Eastern Casualty’s reason was a pretext for discrimination.
4) Eastern Casualty’s Request for Doctor’s Release After Three Vacation Days (Januaiy/October 1995)
Ms. Riebold contends that on October 13, 1995, Eastern Casualty refused to allow her to return to work after taking three days off without first obtaining a work release and confirmation of her ability to drive a car from her doctor. According to Ms. Riebold, the employee manual only required a doctor’s note after five days absence, and did not specify that the note address driving ability (Aff. 20; Dep. 77-2 1). Eastern Casualty admits that Ms. Riebold was required to produce a doctor’s note after her three-day absence. (Ms. People’s Aff. 16.) Ms. Riebold obtained the note, which contained no information about her ability to drive, and was allowed to return to work (Dep. 83-84). Ms. Riebold alleges that this incident supports her claim for disability discrimination.
Assuming that Ms. Riebold can establish a prima facie case of discrimination, the burden shifts to Eastern Casualty to articulate a nondiscriminatory reason for its employment decision. Matthews, supra. Eastern Casualty admits that the employee handbook provided that a doctor’s letter was required after a five-day sick absence; however, in order to conform with the parallel provisions of the FMLA, a notice informing all employees of the change from five days to three days was posted on bulletin boards in all employee work spaces (Ms. People’s Aff 16).
Ms. Riebold’s conjecture about Eastern Casualty’s motive in requiring her to submit a doctor’s note after a three-day sick absence is insufficient to overcome Eastern Casualty’s explanation for its action. Matthew, supra; see Blare, supra at 445. First, she is unable to name any other Eastern Casually employees who were treated differently than her, in that they were not required to submit a doctor’s note after a three day sick leave (Dep. 148-24). Moreover, when asked about what her basis is for claiming discrimination, Ms. Riebold points only to her subjective feelings and opinions. See Polaroid, supra. For example, in her deposition, when asked why she concludes that this action constituted discrimination based upon her diabetic condition,[8] Ms. Riebold stated:
Because it has never been asked of anyone before. Only me. So there is no doubt in my mind and no doubt in their mind . . . Okay ... It is my own opinion that they knew exactly what they were doing (Dep. 81-1).
Accordingly, because no reasonable jury could conclude that Eastern Casualty’s reason for its employment decision was a pretext, there is no triable issue with respect to this incident. See Matthews, supra.
5) Eastern’s Sign-in/Sign-Out Procedure (February 1996)
Upon Ms. Riebold’s return from a 90-day medical leave with certain medical restrictions, Eastern Casualty required her to report to its main office every day to sign in, then go to her scheduled appointments, and when finished, come back to the office to sign out. Ms. Riebold alleges that this procedure was unnecessary and onerous and had never been used with any other employee. Ms. Riebold states that this incident is evidence of disability discrimination because no other employees were ever required to adhere to such a procedure (Answers to Interr. 6C).
Eastern Casualty concedes that Loss Control staff and other employees who work out in the field are generally not required to sign in and out of the office (Ms. Peoples Aff. 27). In light of this concession, Ms. Riebold could conceivably prove a prima facie case of discrimination, thus shifting the burden to defendant to articulate a legitimate, nondiscriminatory reason for its employment decision and to produce credible evidence to show that the reasons advanced are the real reasons. Matthews, supra at 128.
*607 Eastern Casually submitted evidence that its reason for requiring Ms. Riebold to adhere to this sign-in and sign-out procedure was to ensure compliance with the restriction imposed by her doctor that her workday not exceed eight hours (Peoples Aff. 28). Upon receiving information from Ms. Riebold’s doctor that her medical condition had significantly improved, this and all other restrictions were removed and Ms. Riebold was restored to her former duties (People’s Aff. 29-30).
Eastern Casualty has set forth nondiscriminatory reasons for its employment decision; thus, the presumption of discrimination disappears and Ms. Riebold bears the burden of convincing a reasonable jury that Eastern Casualty’s stated reasons for its decision were a pretext. Matthews, supra. Ms. Riebold does not offer evidence sufficient to meet this burden. Ms. Riebold contends that the procedure created a hardship for her because it required her to drive additional mileage and work longer hours (Answers to Inter, 6C). Assuming that this new procedure did in fact create an unreasonable hardship, it is nonetheless insufficient to form a basis for establishing discriminatory pretext. Even if this procedure was inconvenient and not the best approach by Eastern Casually to ensure compliance with Ms. Riebold’s medical restrictions, a reasonable jury could not find in favor of Ms. Riebold in light of the directive provided to Eastern Casualty by Ms. Riebold’s doctor and the fact that once the doctor provided evidence that Ms. Riebold’s condition had improved, Eastern Casualty removed this restriction. Flesner, supra at 808.
6) Statements of Eastern Casualty President James A. Radley (October 1996)
Ms. Riebold asserts that during an October 1996 meeting with Mr. Radley, he said “yes, we have discriminated against you,” and “no one should have to work under these situations." Ms. Riebold further contends that Mr. Radley took no measures to ameliorate her work situation. Ms. Riebold alleges that this is evidence of both disability and age discrimination (Answers to Interr. 5C).
Ms. Riebold maintains that the mere fact that Mr. Radley admitted to discrimination is, in and of itself, discrimination (Dep. 184-9). However, Ms. Riebold later admits that:
When he [Radley] made that statement, I construed it to be that he was saying that they had made special efforts to take care of my restrictions or whatever. (Dep. 155-7.)
Later in the deposition, Ms. Riebold retreated from her original position that Mr. Radley admitted that Eastern Casualty had discriminated against her and admitted that Mr. Radley simply stated that Eastern Casualty treated her differently because of her disability (Dep. 155-12; 158-6).
In order to establish a prima facie case of employment discrimination, Ms. Riebold must present evidence that (1) she is a member of a class protected by G.L.c. 151B; (2) she has performed her job at an acceptable level; and (3) she was terminated or otherwise subjected to adverse employment decisions. Blare, supra at 441. Even if Ms. Riebold has met the first two requirements, she is nonetheless unable to show that the statement, in and of itself, amounts to an adverse employment decision. Id. A reasonable jury could not conclude that by treating her “differently,” Eastern Casualty’s actions were “adverse” and thus rose to the level of discrimination. Id. Accordingly, Ms. Riebold has not established a prima facie case of discrimination. Id.
7) Termination and Replacement by a Younger Employee (December 1997)
Eastern Casualty terminated Ms. Riebold’s employment on December 8,1997. Ms. Riebold contends that this is evidence of both age and disability discrimination because prior to her termination, Eastern Casualty hired a younger, non-disabled LCC. When asked what her factual basis was for alleging that her termination was discriminatory, Ms. Riebold responded:
In December of 1997,1 was unjustly terminated by Eastern Casualty, and replaced with a younger male (in his early 20s). The facts are: This employee had been hired several months (exact date unknown) before my termination. At the time of his hire, an additional loss control consultant was not needed, due to the present work load, by Eastern Casualty. This new employee needed training, as he had no previous experience in loss control. After he began to make loss control surveys, I was terminated. The facts show that I was replaced by a younger person before I was terminated (Answers to Interr. 5A).
To establish a prima facie case of discrimination based on this termination, Ms. Riebold must show that she was a member of a protected class,[9] qualified to do her job, and fired and replaced by an individual of lesser or equal qualifications. Blare, supra at 441. Assuming that Ms. Riebold has met these requirements, the burden shifts to the defendant to state a nondiscriminatory reason for its employment decision. Matthews, supra.
Eastern Casualty stated that its decision to terminate Ms. Riebold’s employment was based on her poor job performance which was documented in her consistently low performance reviews (O’Connor Aff. 42-49).[10]
Ms. Riebold fails to provide evidence to show that Eastern Casualty’s reasons were a pretext. Matthews, supra. In fact, the only evidence of pretext that Ms. Riebold provided was her subjective impression of the reason for her termination. Specifically, she stated that her impression was that they used the missed service call to terminate her because “of filing the legal thing, in retaliation” (Dep. 63-22). Absent factual evi *608 dence from which a reasonable jury could conclude that Eastern’s Casualty’s stated reasons were a pretext or that the real motive for terminating her was discriminatory, Ms. Riebold has not established a triable issue of discrimination based on her termination. Matthews, supra; Flesner, supra at 808.
III. The Merits of Ms. Riebold’s Retaliation Claims
Ms. Riebold supports her retaliation claim by pointing to the following five incidents: (1) Eastern Casualty failed to give her instructions following her return from sick leave: (2) Eastern Casually reprimanded her for scheduling her own appointments: (3) Ms. Riebold’s desk was moved to the clerical department (4) Ms. Riebold was required to sign-in and sign-out; and (5) Ms. Riebold was terminated. The last two incidents were previously discussed and disposed of in this decision.[11] Accordingly, in the context of the retaliation claim, this court will analyze whether Ms. Riebold establishes a triable issue with regard to the first three incidents.
G.L.ch. 151B, §4(4) makes it unlawful for “any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under section five.” To establish a prima facie case of retaliation, plaintiff must show that (1) she was engaged in protected conduct; (2) she was subjected to an adverse employment action at the time or after the protected conduct occurred; and (3) there was a causal link between the protected conduct and the adverse employment action.[12] Connell v. Bank of Boston, 924 F.2d 1169, 1179 (1st Cir. 1991). At a minimum, there must be competent evidence that the alleged retaliator knew of the plaintiffs protected activity and that a retaliatory motive played a part in the adverse employment action alleged. Lewis v. Gilette Co., 22 F.3d 22, 24 (1st Cir. 1994).
Once the plaintiff has made a prima facie showing, the burden of production shifts to the defendant to articulate a legitimate, non-retaliatoiy reason for its employment decision. McMillan v. Mass. Soc. Prev. Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998). If the defendant meets his burden, the plaintiff must show that the defendant’s proffered reason was not, in fact, the real reason for the decision and that the decision was the result of the defendant’s retaliatory animus. Id.
There is no dispute that by filing the first MCAD complaint in December 1995, Ms. Riebold had engaged in protected conduct. The question is whether the acts relied on by Ms. Riebold were adverse employment decisions and causally related to the filing of the first MCAD complaint, and if so, whether Ms. Riebold provided sufficient evidence that Eastern Casualty’s stated reasons for its employment decisions were a pretext.
1) No Instructions Upon Ms. Riebold’s Return from Sick Leave and Reprimand for Scheduling her Own Appointments:
Ms. Riebold alleges that, on February 5, 1996, upon her return from three-month medical leave, her supervisors retaliated against her by failing to provide her with work instructions on the day of her return (Ans. To Int. 7A). Ms. Riebold alleges that on the day of her return, both of her supervisors were out of the office and neglected to leave her work instructions. Id. Because she was not given work instructions, Ms. Riebold scheduled her own appointments and, as a result, was reprimanded. Id. at 7B.
This court need not decide whether these incidents constitute adverse employment action[13] because, even if they do, Ms. Riebold has failed to present evidence of any causal connection between these incidents and the filing of the first MCAD complaint. Ms. Riebold asserts that these actions constitute retaliation only because they occurred after the filing of the first MCAD complaint. It is simply not enough that the events occurred after the filing of the first MCAD complaint, as there must be a causal connection between the filing of the complaint and the adverse employment action. The evidence is not sufficient to make out a claim for a jury. Lewis, supra.
2) Ms. Riebold’s Desk Assignment:
Ms. Riebold contends that her supervisors’ decision to move her desk from the Loss Control Department into the clerical department amounts to retaliatory conduct (Ans. Int. 7C). Eastern Casualty supports its employment decision by stating that LCCs have no assigned desks because they are generally out of the office (O’Connor Aff. 4). Moreover, when Ms. Riebold returned from sick leave, her Department was virtually “bulging at its seams,” as a result of growth of the company work force. Id. at 41. Office protocol was not adhered to during this period, as employees were forced to “play musical chairs” with work stations. Id. Ms. Riebold, the only employee given her own desk (Peoples Aff. 25), was provided with a desk so that she could comply with the restrictions provided by her doctor, namely, that she was given time to prepare and complete reports. Id.
Ms. Riebold provides no evidence of a causal connection between the filing of the first MCAD complaint and Eastern Casualty’s decision to move her desk and therefore does not establish a prima facie case of retaliation. However, even if Ms. Riebold had made a prima facie showing of retaliation, she still carries the additional burden of convincing the trier of fact that Eastern Casualty’s stated nondiscriminatory reason for its employment decision was a pretext. McMillan, supra. Ms. Riebold has not met this burden. Eastern Casualty has presented concrete evidence to show that it was the office conditions and the doctor’s note *609 with the proscribed restrictions, and not the first MCAD complaint, which prompted its actions. Accordingly, based on this incident, Ms. Riebold has offered no evidence, aside from her subjective beliefs, to disprove Eastern Casualty’s stated nondiscriminatoiy animus. Id.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant’s motion for summary judgment be ALLOWED.

Because the second MCAD complaint does not contain all of the alleged incidents, this court is primarily relying on Ms. Riebold’s deposition and answers to interrogatories to determine which of those incidents occurring after the filing of the first MCAD complaint in December 1995 are being relied upon to support the discrimination claims and which incidents are being relied on to support the claim of retaliation, which was filed with MCAD in March 1996. The five incidents that Ms. Riebold relied upon to support her retaliation claim clearly occurred within the six months prior to the filing of the second MCAD complaint. Thus, these five incidents are not barred by the statute of limitations.

Four of the six additional incidents occurred between the filing of the first MCAD complaint in December 1995 and the second MCAD complaint in March 1996; one occurred before the filing of the first MCAD complaint and was mentioned in the first MCAD complaint; and one occurred after the filing of the second MCAD complaint. Only one of the four incidents that occurred between the filing of the first and second MCAD complaint was mentioned in the second complaint.

When termination of employment is involved, plaintiff must also demonstrate that her employer sought to fill her position with another individual with qualifications similar to plaintiff. Beal supra, at 541; Blare, supra at 441.

This evaluation was conducted years before the car accident, the incident that Ms. Riebold contends was the motivating factor behind Eastern Casualty’s discriminatory treatment of her.

The evaluation cites as Ms. Riebold’s strengths her knowledge of loss control in general and her ability to organize her workload.

See Polaroid Corp. v. Rollins Environmental Services (NJ), Inc., 416 Mass. 684, 696 (1993) (a party’s bare assertions, beliefs, and assumptions are not enough to withstand a well pleaded motion for summary judgment).

Considerations of expense, redundancy, and LCC workload of ten dictate that only one LCC at a time be sent to these seminars (O’Connor Aff. 31).

Ms. Riebold was out sick due to “a cold or flu or something like that” (Dep. 79-17).

Both sides concede that Ms. Riebold is a member of protected classes as she is over 40 and disabled.

Eastern Casualty relies upon inadequate performance of her job responsibilities (her declining performance evaluations, the missed service call on an account on October 10, 1997, and the inspection of an agency client resulting in the loss of an account on November 20, 1997).

For the two incidents that Ms. Riebold uses to support both her discrimination claims and her retaliation claims, in either context, Ms. Riebold cannot establish that Eastern Casualty’s stated reasons for their employment decisions were a pretext.

Moreover, Ms. Riebold must show that Eastern Casualty’s desire to retaliate against her was a determinative factor in its decision to terminate her employment. Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).

It is difficult to imagine that these employment decisions constitute the type of adverse employment action envisioned by the enactment of G.L.c. 151B. Ms. Riebold would need to show that Eastern Casualty’s employment decision was substantial enough to constitute a change in working conditions that created the kind of material disadvantage that is a predicate for a finding of unlawful retaliation. MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996) (emphasis added).