CARLETON MATTHEWS *vs.* OCEAN SPRAY CRANBERRIES, INC.

Plymouth. October 14, 1997. - November 12, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Employment,* Discrimination, Termination. *Anti-Discrimination Law,* Burden of proof, Employment, Prima facie case, Race, Termination of employment. *Practice, Civil,* Summary judgment. *Massachusetts Commission Against Discrimination.*

Discussion of the burden of proof in an employment discrimination claim in the context of cross motions for summary judgment. [127-128]

The record of an employment discrimination case on cross motions for summary judgment showed that the defendant introduced credible evidence of a legitimate, nondiscriminatory reason for terminating the plaintiff for having removed company product from company premises without authorization in violation of the company's widely publicized rules [128-129]; further, the record showed that the defendant demonstrated that the plaintiff would be unable to prove at trial that the stated reason for terminating him was a pretext for racial discrimination [129-134].

A finding of probable cause by the Massachusetts Commission Against Discrimination in an employment discrimination case did not preclude a court of competent jurisdiction from entering summary judgment for the defendant employer on the record of cross motions for summary judgment in a civil action arising out of the same circumstances. [134-135]

CIVIL ACTION commenced in the Superior Court Department on September 9, 1993.

The case was heard by *Raymond J. Brassard,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Edward J. McCormick, III (Elizabeth Maitland* with him) for the plaintiff.

*Kay H. Hodge (Andrew L. Matz* with her) for the defendant.

GREANEY, J. The plaintiff, Carleton Matthews, an African-American male, was terminated from his position as a forklift operator in the shipping department of the defendant's, Ocean Spray Cranberries, Inc.'s, Middleborough manufacturing facility on April 23, 1992, after he admitted to removing product

(cranberry sauce) from the facility's premises without authorization. The plaintiff grieved his termination to arbitration pursuant to his collective bargaining agreement, and the arbitrator concluded, in a written decision which was not appealed, that the plaintiff had been terminated for just cause. The plaintiff filed complaints with the United States Department of Labor's Office of Federal Contract Compliance Programs (OFCCP), and with the Massachusetts Commission Against Discrimination (MCAD) alleging employment discrimination. The OFCCP issued a notice of violation (which it subsequently rescinded), and the MCAD entered a finding of probable cause.

The plaintiff next withdrew his charge before the MCAD and filed a complaint in the Superior Court, alleging that the defendant had terminated him because of his race in violation of G. L. c. 151B, § 4 (1). Both parties filed motions for summary judgment, and the judge granted the defendant's motion. Thereafter, the judge denied the plaintiff's motion to strike an affidavit submitted by the defendant's human resources manager. The plaintiff has appealed, and we granted his application for direct appellate review. We affirm the summary judgment for the defendant.

1. The following facts are relevant for the purpose of summary judgment.[1] The defendant maintains at its Middleborough facility a set of "plant rules" which are divided into "major" and "minor" violations. Included as a major violation, which "may result in discharge or a disciplinary suspension," is "stealing," which "involves the stealing of [c]ompany or other employee's property; stealing [c]ompany time such as sleeping on the job, deliberate time card falsification, punching another's time card, claiming pay not due, etc."

On March 20, 1989, a memorandum was issued in which the plant manager highlighted "stealing," and three other major violations, as transgressions that the company would "not toler-

---

[1]In arriving at these facts, we have disregarded several portions of the affidavit submitted by the defendant's human resources manager because they contain inadmissible hearsay. The affidavit, as has been mentioned, was challenged by a motion to strike. The judge who decided the summary judgment motion considered the affidavit only for nonhearsay purposes. Because the record compiled for summary judgment is open to our independent consideration, we have made an independent compilation of the relevant facts to frame the ultimate legal question whether summary judgment is appropriate.

ate."[2] The memorandum "clarif[ied] that [stealing] also [applies to] individuals who are removing product from production lines without authorization, removing product from any designated production or storage area, bringing product or company property outside of the area in which it normally resides without authorization. It includes product or company property that is in an individual's possession or under [the individual's] control[,] such as in a bag or locker or is removed from the control or domain of the company whether it is on the premises or off." The memorandum further stated: "all major violations as noted in the plant rules including stealing . . . will be dealt with in the most extreme manner possible. These plant rules when abused will be looked at as a threat to the well-being of our employees and as such, any individual found to have engaged in any of these activities [will] be terminated." Neither the definition of stealing in the clarifying memorandum, nor in the plant rules, distinguishes between the unauthorized removal of damaged or undamaged product.

On September 20, 1991, the plant manager issued a memorandum entitled "REMOVAL OF COMPANY PROPERTY FROM OCEAN SPRAY COMPOUND." The memorandum stated: "May this note serve to remind all employees that [c]ompany property removed from this facility requires pre-approval by a Manager or Supervisor. Prior approval to remove items may be granted by Managers and Supervisors under circumstances deemed appropriate according to policy and practice at the facility."

The plant rules, and both memoranda, were distributed to employees at the time of their issuance, and are posted on the employee bulletin board next to postings of employee schedules and assignments. At the time of the incident at issue, numerous employees had utilized the authorization form procedure to remove various objects discarded in the facility's dumpsters. The facility also maintains a store where employees may purchase damaged product for three dollars per case.

Despite the rules, deposition testimony indicated that the unauthorized removal of damaged product is commonplace at the facility. Nonetheless, the plant's rules regarding the unauthorized removal of company product are well known and understood among the facility's nearly 400 employees. The

---

[2]The other major violations identified in the memorandum included "use or possession of alcoholic beverages or nonprescription drugs," "distribution of nonprescription drugs," and "contamination."

defendant has terminated all employees it has discovered taking company product without authority since the clarification memorandum was issued.

The Middleborough facility does not manufacture cranberry sauce, although the facility stores and distributes sauce manufactured at the company's Bordentown, New Jersey facility. The defendant tracks inventory received by the Middleborough facility, and cranberry sauce arrives at the facility in palletized lots for distribution to retailers. The company claims that it maintains records regarding damaged product, although some damaged product is discarded without having been recorded.

The plaintiff began his employment with the defendant on October 12, 1987, and by all accounts, he was a good employee and was qualified for his position. In 1988, he received a written warning and a suspension for a major violation of the company's rules (fighting). The warning stated that "your involvement in any major violation in the future will place your job in jeopardy."

On Friday, April 17, 1992, at approximately noontime, James Hurley, a production supervisor at the facility, observed the plaintiff in the cafeteria of the plant carrying a cardboard case containing eight-ounce cans of cranberry sauce under his left arm. The case appeared to Hurley to be unopened. A dark colored jacket was placed on top of the case. The plaintiff then left the cafeteria.

Shortly thereafter, Barbara Denkner, the human resources manager at the facility, learned that the plaintiff had left the facility with company product. She immediately began an investigation into the incident in the course of which she interviewed the plaintiff and other facility employees. Denkner first spoke with the facility's shipping and employee sales departments to ask whether the plaintiff had purchased or had been given any company product. When she was informed that he had not been authorized to remove product from the facility, Denkner then met with the plaintiff and his supervisor, Mustapha Finni.

On informing him that he was seen taking a case of company product, the plaintiff readily admitted that he had taken the product. He explained that he had removed a damaged cardboard case containing dented cans of cranberry sauce from a dumpster in the lot outside the shipping area of the facility. He stated that he believed that he could take the product without authorization because it had been discarded and was in the

dumpster. In response to Denkner's suggestion that he return the product, the plaintiff stated that he had given it to his wife after he left the building.

Following this meeting, Denkner advised Linda Hogan, the acting plant manager, "that an employee had admitted to stealing product." At Hogan's direction, Denkner again met with the plaintiff. James Luckraft, a supervisor at the facility, was present at this meeting. The plaintiff again admitted to taking company product without authorization, and acknowledged that he had received a copy of the plant rules at his orientation and that he was aware of the September 20, 1991, memorandum requiring employees to submit an authorization form, signed by their supervisor, prior to the removal of company property. He maintained that the rules were unclear and that he had misunderstood the authorization policy in that he believed that discarded product found in a dumpster was no longer company product subject to the authorization form requirement.

Denkner did not find the plaintiff's explanation credible because the September 20, 1989 "clarification" memorandum had been distributed to all employees when it was issued and had continued to be posted throughout the facility. In addition, the authorization form policy was posted throughout the plant and was being followed by other employees. At the conclusion of the meeting, Denkner informed the plaintiff that he was suspended pending further investigation of the incident. Later that afternoon, after he was advised that return of the product would assist the investigation, the plaintiff returned to Denkner's office with seven uniformly dented, clean, and otherwise unblemished cans of cranberry sauce in a "Shaw's Supermarket" paper bag, which he told Denkner were the cans he had taken from the dumpster.

Following the plaintiff's suspension, Denkner reviewed company records which indicated that the cans the plaintiff returned were included in a shipment of cranberry sauce received by the Middleborough facility on April 16, 1992, and that part of the shipment had been transported to various retailers in palletized quantities on the same day. The records did not indicate that the cans the plaintiff returned had been damaged, reworked or destroyed during the week and one half, prior to, and including, April 17, 1992. Furthermore, because the dumpster from which the plaintiff alleged he retrieved the cans is emptied daily, Denkner concluded that the plaintiff could not have found the cans in the dumpster. Denkner also concluded

that the plaintiff had been untruthful about the quantity of product taken, since he had been observed carrying a case of product.

After reviewing both the investigation report prepared by Denkner and the plaintiff's personnel file, and after speaking with Denkner, Luckcraft, Finni, and Hurley, Hogan decided to terminate the plaintiff. Hogan asserted in a deposition that, because the plaintiff had removed product from the facility despite the rule against removing company property without authority, and because the authorization form policy for removing property was widely promulgated, and well-utilized by other employees, she did not consider suspending the plaintiff. The plaintiff's disciplinary record did not "weigh[] heavily" on her decision because "[u]nder the circumstances with [the plaintiff] having stolen company property, it would have stood alone . . . in terms of requiring a termination." On April 23, 1992, Hogan met with the plaintiff to advise him that he was discharged. Hogan maintained that prior to that meeting, she had "never connected [the plaintiff's] face and [his] name."

2. The party moving for summary judgment has the burden of affirmatively demonstrating the absence of a genuine issue of material fact on every relevant issue, even if the party would not have the burden on an issue if the case were to go to trial. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). The moving party may satisfy its burden by demonstrating that the opposing party has no reasonable expectation of proving an essential element of the case at trial. *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991). Here, we concentrate on the defendant's motion for summary judgment which is the one granted by the judge, and is at the heart of the appeal.

Summary judgment is admittedly a disfavored remedy in discrimination cases based on disparate treatment. *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 439 (1995), and cases cited. Nonetheless, summary judgment is not always inappropriate in these cases. We have upheld summary judgment in favor of defendants where their motions demonstrate that the plaintiff is unable to offer admissible evidence of the defendant's discriminatory intent, motive, or state of mind sufficient to carry the plaintiff's burdens and support a judgment in the plaintiff's favor. See *id.* at 440, and cases cited.

In employment discrimination cases alleging disparate treatment, we allocate the burden of producing evidence according to the framework set forth by the United States Supreme Court

under the Federal antidiscrimination provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. (1994). See *id.* at 440-441 (1995); *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 371 Mass. 130, 138 (1976), citing *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of racial discrimination. *Blare, supra* at 441. See *McDonnell Douglas Corp., supra* at 802; *Wheelock College, supra* at 138. Once the plaintiff meets this burden, unlawful discrimination is presumed. The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its hiring decision, *Blare* at 441-442, citing *Wheelock College, supra* at 136, and *McDonnell Douglas Corp., supra*, and to "produce credible evidence to show that the reason or reasons advanced were the real reasons." *Blare, supra* at 442, quoting *Wheelock College, supra* at 138. The defendant's "burden of production is not onerous." *Blare, supra* at 442. "The reasons given for a decision may be unsound or even absurd," and the action may appear "arbitrary or unwise," nonetheless the defendant has fulfilled its obligation. *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 766-768 (1986). The defendant is not required to persuade the fact finder that it was correct in its belief. *Tate* v. *Department of Mental Health*, 419 Mass. 356, 362 (1995). Once the defendant meets its burden, the presumption of discrimination vanishes, and the burden returns to the plaintiff to persuade the court, by a fair preponderance of the evidence, that the defendant's proffered reason for its employment decision was not the real reason, but is a pretext for discrimination. *Blare, supra* at 444-445. The plaintiff bears the burden of persuasion on the ultimate issue of discrimination, *id.* at 445, and therefore must "produce evidence sufficient to support a jury verdict that it was more likely than not that the articulated reason was pretext for actual discrimination." *Id.* at 447. If the defendant's reasons are not discriminatory, and if the plaintiff does not prove that they are pretexts, the plaintiff cannot prevail. *Lewis, supra* at 766.

3. Because the defendant does not argue that the plaintiff has failed to establish a prima facie case for summary judgment purposes, we assume, without deciding, that a prima facie case has been demonstrated. The plaintiff contends that the judge erred in denying his cross motion for summary judgment because the defendant failed to produce sufficient evidence to

rebut the prima facie case. We disagree. The record shows that the defendant introduced credible evidence to demonstrate that it terminated the plaintiff because he had taken company product without authorization in violation of the company's widely publicized rules. The defendant immediately initiated a thorough investigation into the incident, and did not accept the plaintiff's explanation because, if indeed he was not aware, he should have been aware of the rules against removal of product without authority. It was reasonable in these circumstances for the defendant to conclude that the plaintiff was aware of the clarification memorandum and authorization form policy, but deliberately failed to adhere to them. In addition, the defendant reasonably could have suspected that the plaintiff lied about the circumstances surrounding his removal of the product. Accordingly, the defendant has satisfied its burden of advancing a legitimate, nondiscriminatory reason for terminating the plaintiff, and supporting that reason with credible evidence.[3]

We then turn to the issue whether the summary judgment record demonstrates that the defendant has shown that the plaintiff will be unable to prove at trial that the stated reason for terminating him was a pretext. The most probative means of establishing that the plaintiff's termination was a pretext for racial discrimination is to demonstrate that similarly situated white employees were treated differently. *Smith College* v. *Massachusetts Comm'n Against Discrimination*, 376 Mass. 221, 228 (1978) (fact of discriminatory motive "can be inferred from differences in the treatment of [employees of different races]"). We have not previously considered what evidence a plaintiff must produce to show that two individuals are similarly situated for purposes of proving differential treatment, and thus discrimination, in violation of G. L. c. 151B. We adopt the approach taken by Federal courts under Title VII that in order to establish that the defendant's stated reasons for terminating him were a pretext, the plaintiff must "identify and relate specific instances where persons similarly situated 'in all relevant aspects' were treated differently." *Dartmouth Review* v. *Dartmouth College*, 889 F.2d 13, 19 (1st Cir. 1989), quoting *Smith* v. *Monsanto Chem. Co.*, 770 F.2d 719, 723 (8th Cir. 1985), cert.

---

[3]Because we conclude that the defendant has satisfied its burden of production, we need not discuss the defendant's contention that the arbitrator's determination that the plaintiff was discharged for stealing in violation of the company's rules is "per se" evidence of a legitimate nondiscriminatory reason for the discharge.

denied, 475 U.S. 1050 (1986). The plaintiff must identify other employees to whom he is similarly situated "in terms of performance, qualifications and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situations." *Smith* v. *Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995), quoting *Mitchell* v. *Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Although the offenses of two employees need not be identical, the offenses must be of comparable seriousness. *McDonnell Douglas Corp.*, *supra* at 804. Employees are not similarly situated where one is disciplined pursuant to one policy and then seeks to be compared to coworkers who were not subject to that policy or were subject to a previous policy. See *Hooker* v. *Tufts Univ.*, 581 F. Supp. 104, 114 (D. Mass. 1983).

The plaintiff submitted evidence that other individuals employed at the Middleborough facility, all of whom were white and were comparable to him in terms of positions and pay, committed violations of the company's rules but were not terminated. He argues that this evidence would be sufficient to persuade a fact finder that it was more likely than not that the defendant's articulated reason for his termination was pretext for actual discrimination. We disagree.[4]

The plaintiff asserts that the defendant discovered a white female employee stealing company product but did not terminate her. In 1989, the defendant conducted an undercover investigation to determine whether employees were taking product from the facility. The employee was observed taking concentrate from her work area. When confronted by the defendant, the employee explained that she had not removed the juice from the premises, but had taken the juice to the ladies' room refrigerator for consumption by employees while they were working. While meeting with the defendant, she stated that she had occasionally retrieved damaged concentrate from a rework bin containing product destined for a dumpster, and taken it home with her.

---

[4]We have said that, in addition to evidence of an employer's differential treatment of employees based on their race, evidence which may be relevant to the plaintiff's showing of pretext may include the employer's general practice and policies concerning employment of racial minorities. See *Lewis* v. *Area II Homecare for Senior Citizens, Inc.*, 397 Mass. 761, 767 1986). The plaintiff also asserts that the defendant has exhibited discriminatory intent in that it does not employ African-American managers or supervisors. However, he has not supported this assertion, as he must in order to meet his burden of establishing pretext, with evidence concerning whether any African-Americans have ever applied for such positions, and, if so, evidence concerning their qualifications. Thus, the plaintiff's assertions do not assist his pretext claim.

The clarifying memorandum was issued subsequent to, and as a result of, the defendant's undercover investigation. Accordingly, at the time the employee was discovered removing product, the facility's policy regarding stealing had not been clarified nor had the authorization form policy been implemented. In contrast, at the time the plaintiff was terminated, not only was a different "policy" in effect, but that policy had been disseminated to employees and posted throughout the plant, and was well known and understood.[5] Accordingly, we conclude that because the plaintiff was disciplined under a different policy from this employee, she was not similarly situated to the plaintiff, and evidence of the defendant's disciplinary action toward her does not assist the plaintiff in establishing pretext.[6]

Nor are the three white male employees identified by the plaintiff as having "falsified time cards" similarly situated to the plaintiff for purposes of establishing pretext. All three of these employees were suspended for committing a major violation of the plant rules, specifically "deliberate time card falsification." As the plaintiff asserts, this violation is included

[5]The plaintiff maintains that the clarification memorandum does not make any reference "to the removal of damaged product or to the removal of product discarded in a dumpster." As stated above, the memorandum does not distinguish between removing damaged or undamaged product, but instead refers to "removing product," and "bringing product or company property outside of the area in which it normally resides without authorization." While the memorandum could have been stated more clearly, deposition testimony indicated that the defendant's assertion that the memorandum was meant to include removal of product from a dumpster, was generally understood among the company's employees.

[6]The plaintiff also contends that a white male employee also was caught stealing product and was not disciplined. However, he does not offer any evidentiary support for his assertion. The plaintiff does not carry his burden of demonstrating pretext on a motion for summary judgment where he provides merely "sketchy evidence lacking a sufficient foundation for a legally relevant comparison" of allegedly similarly situated employees. *Smith* v. *Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994), cert. denied, 514 U.S. 1108 (1995). In any event, we conclude that the employee is not similarly situated to the plaintiff for the same reasons as the white female employee described above.

In concluding that the plaintiff was not similarly situated to either of these employees, the Superior Court judge relied, in part, on the fact that the plaintiff had a prior disciplinary action on his record but did not produce any evidence relative to the employees' disciplinary histories. However, the record clearly demonstrates that this disciplinary action was not a significant factor in Hogan's decision to terminate the plaintiff. Under these circumstances, it is not relevant to establishing comparability.

in the definition of stealing, the offense for which he was terminated. However, there are certainly " 'differentiating or mitigating circumstances that . . . distinguish' their situations." *Smith* v. *Stratus Computer, Inc., supra* at 17. All three employees had actually worked the total number of hours recorded on their cards,[7] none was paid in excess of the time he actually worked, and at the time of the offenses, the defendant did not have an official policy concerning the manual completion of time cards.[8] During the course of its investigations, the defendant determined that each employee had misunderstood the company's procedure, on which they were orally instructed by their supervisors, for manually completing time cards. In response to these incidents, on June 30, 1992, the defendant issued a memorandum clarifying the time card policy.[9] On these circumstances, it is not reasonable to conclude, as the plaintiff does, that these employees stole company time in a manner comparable to his alleged stealing of company property.

The plaintiff also attempts to show disparate treatment by noting that these three employees' assertions that they misunderstood the rules regarding time card completion were accepted by the defendant and considered mitigating circum-

---

[7]The first employee, a cook, was suspended on the defendant's discovery that he had handwritten on his time card a start time between fifteen and twenty minutes earlier than he actually began his shift. On further investigation, the defendant learned that the employee had actually arrived at the facility at the time reflected on his time card, and had spent the time prior to arriving at his work station speaking to the cook who was on the prior shift to learn what had transpired during his shift. At the time, there was no supervisor to whom the employee could direct questions.

The second employee was observed leaving fifteen to twenty minutes earlier than reflected on his time card. The company's investigation revealed that he often started work early and worked through lunch, which he did not record.

The third employee was observed leaving the facility's premises one-half hour earlier than reflected on his time card. On investigation, the employee had actually not taken any lunch or other break that day.

[8]The memorandum clarifying stealing as it related to the unauthorized removal of company product did not address falsification of time cards.

[9]Notably, the memorandum clarifying the time card policy indicates that the company views inaccurately completed time cards differently than the unauthorized removal of company property. Unlike the clarification memorandum regarding stealing which calls for termination, the time card memorandum is equivocal and concludes by noting that "[w]e see inaccurate time cards as the falsification of company records, and, depending on the circumstances, as stealing. If the circumstances warrant, an individual will be terminated."

stances for purposes of disciplinary action. The defendant was warranted in taking into account the extent to which the time card completion policies and the stealing policies had been clearly established and promulgated at the times of the employees' respective offenses.

The plaintiff further offers the defendant's treatment of another white male employee as evidence of disparate treatment. After the employee was convicted of a felony (indecent assault and battery of a child under fourteen years of age), the defendant granted his requested unpaid leave of absence so that he could serve a ninety-day prison sentence. The plaintiff asserts that the employee's major violation of plant rules against "immoral conduct or indecency," and the defendant's accommodation of his request for a leave, should be compared to the defendant's harsh disciplinary action against him. While there is a question whether the plant rules on "immoral conduct or indecency" are intended to apply only to conduct occurring on company premises or also to apply to an employee's conduct while not working, the answer to this question is not pertinent.

The plaintiff was not similarly situated to this employee in any relevant respect. First, the circumstances giving rise to the employer's knowledge of these events is distinct. While this employee approached the defendant about his conviction and need for a leave, the plaintiff was caught taking company product, without authority, and deemed to have been lying about the circumstances of the incident. Second, unlike "immoral conduct or indecency," the plaintiff's violation — stealing — was explicitly at issue in the clarification memorandum, which concluded by stating that "any individual found to have engaged in any of these activities [will] be terminated."

Evidence offered by the defendant indicates that the company has been consistent in terminating employees discovered removing company product without authority. The defendant presented evidence that two white males were, like the plaintiff, terminated for violating the plant rules against theft. In March, 1981, the first employee was observed carrying six cases of product out of the facility without authority. He was discharged for attempted theft and destruction of company property after he admitted that he had taken the product and had not produced any extenuating circumstances. In November, 1989, the second employee was observed taking two cases of juice out of the plant without permission. He placed them in a dumpster and later removed them from the dumpster and placed them in his

car. When confronted, he admitted taking the juice without authorization, but stated that he intended to pay for it the following day. He was thereafter terminated for stealing company property.

These two employees were similarly situated to the plaintiff in all relevant respects. All three were caught removing company product without authorization from the facility's premises. The first employee was terminated for actions occurring prior to the clarification memorandum, while the second employee, like the plaintiff, was terminated after the memorandum had been issued.

The plaintiff asserts that he is the only employee ever terminated for having taken damaged product from the company's premises, and that this distinguished him from other employees who have been discovered taking company product in violation of the plant rules. We do not consider significant the fact that the two employees previously terminated took undamaged product while the plaintiff took damaged product. As noted above, the company's rules forbidding the removal of company product do not distinguish between damaged and undamaged product, and these rules were well-known and understood by the company's employees. Chapter 151B "does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless the facts and circumstances indicate that discriminatory animus was the reason for the decision." *Smith* v. *Stratus Computer, Inc., supra* at 16.

4. The plaintiff asserts that the MCAD's finding of probable cause precludes summary judgment in favor of the defendant. In *Tate* v. *Department of Mental Health,* 419 Mass. 356, 364 (1995), we noted that, "although it is not determinative of whether the plaintiff will be able to satisfy her burden of proof, it is important to note that both the MCAD and the [Office of Civil Rights of the United States Department of Health and Human Services] issued findings of lack of probable cause with respect to the plaintiff's [unlawful discrimination] claim." We decline to rule, as the plaintiff requests, that a finding of probable cause by the MCAD satisfies the plaintiff's burden of proof.[10] Such a ruling would effectively nullify the burden of persuasion placed on plaintiffs alleging unlawful employment discrimination, and would result in cases proceeding to trial

---

[10]We note that following an investigation, the United States Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) issued

where the plaintiffs have no reasonable expectation of proving discrimination, a result contrary to the purpose of summary judgment in G. L. c. 151B cases.

5. The summary judgment materials establish, as a matter of law, that the plaintiff will be unable to prevail at trial, and that the judge properly ordered summary judgment for the defendant.

*Judgment affirmed.*

---

findings concluding that the defendant's termination of the plaintiff was proper and was not racially motivated.