678  58 Mass. App. Ct. 678 (2003)

Holland *v.* BLH Electronics, Inc.

BARBARA HOLLAND *vs.* BLH ELECTRONICS, INC.

No. 01-P-1026.

Norfolk. April 11, 2003. - July 31, 2003.

Present: PORADA, KASS, & GREENBERG, JJ.

*Anti-Discrimination Law,* Race, Termination of employment, Prima facie case. *Practice, Civil,* Summary judgment.

Discussion of the plaintiff's burden of production, for summary judgment purposes, in an employment discrimination case based on disparate treatment. [681]

In an employment discrimination action, the judge erred in granting summary judgment in favor of the defendant employer on the basis that the plaintiff, an African-American, had failed to establish a prima facie case that the defendant had terminated her employment on the basis of race, where the plaintiff had produced evidence that she had performed her job at an acceptable level and, by producing evidence that the defendant imposed less strict hiring standards on a similarly situated white employee, had established a genuine issue of material fact whether the defendant's purported reason for her termination was a pretext. [682-684]

CIVIL ACTION commenced in the Superior Court Department on December 22, 1999.

The case was heard by *John S. McCann*, J., on a motion for summary judgment.

*Wendy H. Sibbison* for the plaintiff.

*Jerome H. Somers* (*Anne M. Gaeta* with him) for the defendant.

GREENBERG, J. The plaintiff, an African-American, brought an action against the defendant, BLH Electronics (BLH), alleging in count I of her complaint discrimination based on her race, in violation of G. L. c. 151B, and in count II civil rights violations, as defined in G. L. c. 266, § 127B. After what appears to have been extensive discovery, a Superior Court judge, on May 11, 2001, allowed BLH's motion for summary judgment. He ruled that there was no genuine issue of material fact and that

the plaintiff "failed to show that she has a reasonable expectation of making out a prima facie case of race discrimination." The plaintiff appeals, and we reverse.[1]

Our standard of review is relatively straightforward. A judge presented with a motion for summary judgment must consider "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in determining whether summary judgment is appropriate. Mass.R. Civ.P. 56(c), 365 Mass. 824 (1974). The burden on the moving party is to "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* Further,

> "[w]hen a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

Mass.R.Civ.P. 56(e), 365 Mass. 825 (1974). See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 554 (1976).

With these principles in mind, we sketch the salient facts. Responding to the defendant's advertisement for unskilled "sensor etchers," the plaintiff and several other applicants were interviewed on June 20, 1997. After an initial meeting with BLH's human resources administrator, Dale Mandoni, the plaintiff met with the head of the sensor department, Adelinde Blair, to take some basic math and manual dexterity tests. Blair was "shocked that [the plaintiff] knew basic math," where other applicants did not.

The plaintiff was one of two candidates hired by the defendant that day. The other was Dorothy Foster, who was Caucasian. Blair did not meet with Foster before she was hired and did not require Foster to take any math or dexterity tests. Neither the plaintiff nor Foster had any experience as a sensor etcher, and

---

[1]The plaintiff does not appeal from the dismissal of the civil rights claim alleged in the second count of her complaint; she appeals only from the judgment dismissing her discrimination claim.

both participated together in the same six-day training program. Although a trainee usually takes three months to become proficient as a sensor etcher, both women progressed so well that they began production work immediately upon completing their training.

Three days later, Blair came to the plaintiff's and Foster's work area to observe their work. The two employees sat about five to six feet diagonally across a table from each other, where, according to Foster's affidavit, they were doing identical work, both doing it "the same way we had been instructed." Blair watched Foster and made no comment. Next, she observed the plaintiff. Apparently dissatisfied with the plaintiff's work, Blair began "violently yelling and screaming" at the plaintiff, and slamming her hand on the table. The plaintiff attempted to explain that she was performing the work in the manner she believed the training supervisor had prescribed but was unable to finish her explanation because of Blair's yelling. The plaintiff started to cry, and Blair left the work area.

Later that same day, the plaintiff spoke to the human resources administrator, Mandoni, and recounted to her the incident earlier that day with Blair. Mandoni is then said to have granted the plaintiff permission to leave for the day with full pay, given her obvious distress. In reply, the plaintiff indicated she was able to finish her shift and, in fact, did so. The plaintiff also worked without incident the following two days in the same department.

The next Monday, July 21, in a private meeting with Mandoni, Blair expressed the view that the plaintiff had been "insubordinate" to her. Blair also took exception to the fact that the plaintiff, as she saw it, had acted out in the presence of other employees. This led to BLH's decision to end the plaintiff's employment effective July 23, 1997, as Blair had recommended. Mandoni informed the plaintiff of the same, citing insubordination in the plaintiff's obstinate refusal to do the work as Blair had instructed.

The next day, July 24, the plaintiff filed a complaint against BLH with the Massachusetts Commission Against Discrimination (MCAD), alleging that BLH had discriminated against her based on her race. After investigation, MCAD determined that the plaintiff's allegations were credible and found probable

cause that an act of discrimination had occurred. The MCAD offered the possibility of a conciliation conference and, absent that, a public hearing and final disposition. The plaintiff filed a related complaint with the Equal Employment Opportunity Commission. However, both administrative cases were dismissed without prejudice when the plaintiff elected to pursue her judicial remedies.

*Discussion.* We start with the proposition that "[s]ummary judgment is a disfavored remedy in the context of discrimination cases based on disparate treatment." *Blare* v. *Husky Injection Molding Sys. Boston, Inc.*, 419 Mass. 437, 439 (1995), and cases cited. Where there is conflicting evidence as to a defendant's discriminatory motive, courts may not dispose of such cases on the basis of affidavits. *Id.* at 439-446. The burden of persuasion rests at all times with the plaintiff. *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 139 (1976). For summary judgment purposes, the shifting burden of production in a racial discrimination case follows the three stage order of proof formula of *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973), cited and discussed in *Wheelock College, supra.*

Thus, to make out a prima facie case in stage one, the plaintiff must establish that she was a member of a protected class; that she was performing her job in an acceptable way; that she was fired; and that the defendant sought to fill the plaintiff's position by hiring someone else who was no more qualified than the plaintiff. See *Blare, supra* at 441. The defendant in stage two must then rebut the presumption of discrimination by producing evidence of some legitimate, nondiscriminatory reason for the employee's termination. See *Abramian* v. *President & Fellows of Harvard College*, 432 Mass. 107, 116-117 (2000). Should the defendant satisfy that requirement, the burden then shifts back in stage three to the plaintiff, who must produce evidence that the reason articulated by the employer is a mere pretext. *Id.* at 117-118. If the fact finder determines that one or more of the defendant's reasons for its employment decision is false, "it may (but need not) infer that the [defendant] is covering up a discriminatory intent, motive or state of mind." *Lipchitz* v. *Raytheon Co.*, 434 Mass. 493, 501 (2001).

Here, the judge concluded that the plaintiff failed to establish a stage one prima facie case of racial discrimination because she failed to show evidence that she was performing her job acceptably. Adequate job performance, according to the judge, assumes the ability to get along with coworkers, including supervisors, and the incident with Blair demonstrated that the plaintiff fell short in that respect. In addition, the judge concluded that the defendant was entitled to summary judgment on the independent ground that the plaintiff failed in her third stage order of proof to offer evidence that the defendant's purported legitimate, nondiscriminatory reason (insubordination) for terminating her employment was a mere pretext. For her part, the plaintiff argues that the judge erred by failing to accept as true, and even omitted from his decision any reference to, factual statements contained in the affidavit of her coworker, Foster, which refuted allegations that the plaintiff had been insubordinate, disrespectful toward Blair, or disruptive in any way; and also by disregarding the fact that Foster, unlike the plaintiff, was hired without ever meeting Blair and without being asked to take the tests that were required of the plaintiff.

We have examined the record in this case and conclude that Foster's affidavit corroborates in all material respects the plaintiff's version of the encounter with Blair, thus creating an issue of fact in stage one proof whether the plaintiff had performed her job acceptably.[2] Moreover, the imposition at the hiring stage of stricter standards on the plaintiff than on Foster may also support an inference of discriminatory motive on

---

[2]Foster had an unobstructed view of the plaintiff's workstation and could hear clearly what was said by Blair and the plaintiff. Foster and the plaintiff were performing the same task in the same manner that had been taught to them in their recent training. Blair made no comment or criticism to Foster about her work; but, upon observing the plaintiff's work, she "began violently yelling and screaming at [the plaintiff] stating, 'No, No, No' and violently and repeatedly banging her hand on the work table right in front of [the plaintiff, who] kept trying to say 'But this is the way we were taught . . .' but [the plaintiff] was unable to finish because of Ms. Blair's yelling . . . ."

Foster further observed that, during the encounter, the plaintiff was not disruptive or insubordinate and did not refuse to follow instructions. Nor, by Foster's observation, did the plaintiff threaten Blair or show disrespect toward Blair.

In her deposition, Blair offers a dramatically different account of her exchanges that day with the plaintiff.

BLH's part at the employment termination stage. See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 227-228 (1978); *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 129 (1997) ("The most probative means of establishing that the plaintiffs' termination was a pretext for racial discrimination is to demonstrate that similarly situated white employees were treated differently").

Prior to terminating the plaintiff, BLH made no attempt to look into her report of Blair's supposed racial animus and of Blair's supposed disparate treatment of the plaintiff by interviewing Foster or any other employee who may have overheard the altercation between Blair and the plaintiff. The termination decision appears to have been based solely upon BLH's acceptance of the accuracy of Blair's account and its confidence in Blair's long record of service, which apparently was unmarred by any past reports of discriminatory behavior by her toward other employees under her supervision.

Ultimately, a trier of fact might conclude that the treatment experienced by the plaintiff was, as the motion judge concluded, based merely upon her "subjective feelings," unrelated to any actual discriminatory animus on BLH's part. However, the motion judge erred by disregarding Foster's affidavit and also by failing to consider that the plaintiff (who is black) and Foster (who is white) were similarly situated "in terms of performance, qualifications, and conduct without such differentiating or mitigating circumstances that would distinguish [them]." *Matthews* v. *Ocean Spray Cranberries, Inc.*, 426 Mass. at 130 (internal quotations omitted).[3]

In sum, it was the plaintiff's burden, once BLH demonstrated the absence of disputed issues of material fact, to provide evidence supporting each of the stage one requirements for a prima facie case of discrimination, and in addition to that, to provide evidence in stage three tending to show that BLH's stated reason (insubordination) for terminating the plaintiff was

---

[3]Unlike *Matthews*, *supra*, this is not a case where, on summary judgment, the court must accept as true that the plaintiff was offensive or insubordinate to Blair; it merely must accept that the affidavits create an issue of fact on that score.

a pretext. The plaintiff met her burden in stage one with evidence that she had performed her job at an acceptable level.[4]

Based on the disparate treatment accorded the defendant as distinct from Foster, the plaintiff also established a genuine issue of material fact for a jury to decide whether the insubordination ground for termination was a pretext.[5] See *Smith College* v. *Massachusetts Commn. Against Discrimination, supra.* Where, as here, there are conflicting explanations for an adverse employment decision, a jury must weigh them for credibility. *Blare* v. *Husky Injection Molding Sys. Boston, Inc., supra* at 439-440.

*Judgment reversed.*

---

[4]There is no dispute that the plaintiff, as an African-American, is a member of a protected class or that she was terminated. Nor is there a genuine dispute that BLH needed to fill the position and did so, after the plaintiff had been terminated, with a person of qualifications similar to the plaintiff's.

[5]Possible further indication of pretext is found in evidence from Blair's own deposition that Blair did not initially consider recommending termination by reason of insubordination but then did so upon learning several days later that the plaintiff had reported the encounter to the human resources administrator who, in turn, asked Blair for a report and recommendations on the incident. It was only at that point that Blair recommended termination.