# United States Court of Appeals
## For the First Circuit

No. 08-2254

MARKDALE WINDROSS,

Plaintiff - Appellant,

v.

BARTON PROTECTIVE SERVICES, INC.,

Defendant - Appellee,

JEREMY CAMPBELL; MARK ETHRIDGE,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U. S. District Judge]

Before

Boudin, John R. Gibson,[*] and Howard,
Circuit Judges.

Brailey E. Newton for appellant.
David C. Hamilton for appellee.

November 17, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON, <u>Circuit Judge</u>.**  This employment case, brought under state law and removed to federal court, involves charges of discrimination, retaliatory harassment, and hostile work environment pursuant to Massachusetts General Laws chapter 151B. The district court entered summary judgment for the defendant, Barton Protective Services, Inc.  ("Barton Services"), and the claims against the individual defendants were terminated for failure to serve them with process.  We affirm.

## I.  Background

Markdale Windross was a security officer employed by defendant Barton Services from September 2002 through July 9, 2003, when Barton Services terminated his employment.

On July 7, 2003, Windross was to undergo oral surgery, and he switched work shifts with another security officer to do so without first obtaining permission.  Barton Services's handbook requires that employees submit in writing a request to switch shifts and obtain permission from a supervisor.  Windross acknowledges that the handbook governs the workplace.  The next day, Mark Ethridge, the Barton Services on-site account manager, issued a written disciplinary action against Windross for switching his shift because it was a violation of Barton Services's written policies.  On that same day, Windross asked Jeremy Campbell, a supervisor at Barton Services, for a copy of his personnel file.

Campbell informed Windross that he would need to obtain it from the Barton Services Human Resources Department. Within the same conversation, Campbell swore at Windross and approached him in a physically threatening manner.

On July 9, 2003, Windross went to speak with the acting operations manager, Christa Indorato, but was referred to Louise Ordman, the Human Resources Manager. Windross alleges that Ordman conducted a number of discourtesies during his visit, so he refused to speak with her. Ordman then told Windross to leave her office. Windross asked for the telephone number of the vice president, Kevin Johnson, but Ordman told Windross that Johnson was away. When Windross arrived at work later that same day, Ethridge told him that he was required to meet with Ordman. Again, Windross refused. After Windross's second refusal to meet with Ordman, he was immediately suspended. Ordman telephoned Windross the next day and again demanded that he meet with her. When he refused because of her hostile attitude, she told him she was terminating his employment. On July 21, Ordman sent Windross a letter formalizing his dismissal.

On April 29, 2004, Windross filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination. In his Charge, Windross alleged that he had been discriminated against by Barton Services. Windross also alleged that Ethridge and Campbell had retaliated against him. On April 18, 2006, Windross filed a

motion to amend the Charge to add a claim for hostile work environment. On June 1, 2006, Windross filed a request with the Massachusetts Commission Against Discrimination to withdraw his Charge in order to file a lawsuit in state court.

Windross filed his Complaint in the present lawsuit in Suffolk County Superior Court on July 3, 2006. Barton Services removed the case the following April, and Windross moved to have it remanded. On July 10, 2007, the district court denied the motion to remand. Ten days later, Windross moved to amend his complaint to add a claim for hostile work environment, which the district court denied. The district court also terminated Ethridge and Campbell as defendants in this action after learning that Windross had failed to serve either of them with process. On June 18, 2008, approximately ten months after the district court denied his motion to amend, Windross filed a motion for reconsideration of his original motion to amend. On August 20, 2008, the district court denied the motion for reconsideration. In spite of these rulings, Windross filed his Amended Complaint on November 7, 2008. The Amended Complaint added one count for hostile work environment, which was the addition he sought in his motion to amend and motion for reconsideration. Windross also inserted a handwritten sentence that more directly stated a retaliation claim against Barton Services. That sentence had not been included in his motion to amend or for reconsideration.

On appeal, Windross argues that the district court erred in granting summary judgment to Barton Services.  First, Windross relies on the continuing violation doctrine in an attempt to revive his time-barred claims.  Second, he argues that Barton Services's reliance on shift-switching as the basis for discipline, suspension, and termination was pretextual and thus summary judgment should not have been granted.  In addition, Windross asserts that the district court erred in denying his motion to amend and motion for reconsideration.[1]

## II.  Analysis

### A.  Timeliness

We first address Windross's argument that the continuing violation doctrine can overcome the bar of the statute of limitations.  Windross brought his claims under Massachusetts law, which requires a claimant to file a Charge of Discrimination with the Massachusetts Commission Against Discrimination within 300 days of the alleged discriminatory act.[2]  Mass. Gen. Laws ch. 151B, § 5

---

[1]Windross includes in his brief the district court's decision not to address his belated claim that Barton Services committed unlawful retaliation pursuant to Massachusetts General Laws chapter 151B.  Because the claim of retaliation by Barton Services was not properly raised in district court, we need not address this claim.

[2]In 2002, the Massachusetts Legislature amended Massachusetts General Laws chapter 151B, section 5, extending the limitations period from six months to 300 days.  2002 Mass. Legis. Serv. ch. 223, § 1 (S.B. 915) (West).

(2002).  Also, any lawsuit must be commenced within three years after such act.  Mass. Gen. Laws ch. 151B, § 9 (2002).  "By the plain language of the statute, the limitations period begins to run at the time of the 'act of discrimination.'" Ocean Spray Cranberries, Inc. v. Massachusetts Comm'n Against Discrimination, 808 N.E.2d 257, 265 (Mass. 2004).

In this case, neither party disputes that the applicable limitations period pursuant to Massachusetts law is 300 days. Windross filed his Charge of Discrimination with the Massachusetts Commission Against Discrimination on April 29, 2004.  Windross filed his complaint in Suffolk County Superior Court on July 3, 2006.  The statute of limitations bars Windross from filing a Charge arising out of events that occurred before July 4, 2003, and from bringing a civil action based on events that occurred before July 3, 2003.  Accordingly, the only timely claims are Windross's allegations that he was discriminated against on July 8, 2003, when he was disciplined for switching shifts and that Barton Services discriminated against him when he was suspended from employment on July 9, 2003 and subsequently terminated.

As the district court noted, two instances of alleged discrimination are barred by the statute of limitations.  Both occurred on June 20, 2003, when a white employee received an acting supervisory position over Windross, who had more seniority, experience, and training, and when Windross received a negative

employment evaluation that included a comment that he "seems to want to 'champion' the cause of perceived inequalities . . . and does not demonstrate trust in the supervisor . . . to handle issues appropriately."

Windross, however, invokes the continuing violation doctrine in an effort to save from dismissal his claims of the earlier acts of discrimination. For the continuing violation doctrine to apply, a plaintiff must prove that (1) at least one discriminatory act occurred within the limitations period, (2) the alleged timely discriminatory act has a substantial relationship to the alleged untimely discriminatory act, and (3) the otherwise time-barred events did not trigger his "awareness and duty" to assert his rights. Ocean Spray, 808 N.E.2d at 266-67. A plaintiff's awareness and duty is triggered when he "knew or could have formed a reasonable belief that the earlier violations were discriminatory." Id. at 267, n.16.

Windross's attempt to invoke the continuing violation doctrine to rescue some of the claims from dismissal misses the mark because Windross reasonably believed that earlier violations were discriminatory. Here, Windross stated in his deposition testimony that he understood that he was being discriminated and/or retaliated against at the time each of the alleged time-barred acts occurred. Accordingly, the district court did not err in holding that the continuing violation doctrine is not available to Windross

-7-

to overcome his time-barred claims.  See Williams v. Raytheon Co.,
220 F.3d 16, 21 (1st Cir. 2000) (holding that continuing violation
doctrine "does not apply because [plaintiff] considered the act of
which he complains discriminatory at the time").

### B.  Discrimination Claim

We next address Windross's claim that the district court
erred in granting summary judgment because he presented no evidence
of pretext.  We review grants of summary judgment *de novo*.  In
conducting that review, the court is bound to scrutinize the
evidence in a light most agreeable to the nonmoving party, giving
that party the benefit of any and all reasonable inferences.  Cox
v. Hainey, 391 F.3d 25, 27 (1st Cir. 2004).  Employment
discrimination claims brought under Massachusetts General Laws
chapter 151B are reviewed according to the burden-shifting
framework similar to that articulated by the United States Supreme
Court for Title VII cases in McDonnell Douglas Corp. v. Green, 411
U.S. 792, 802 (1973).  Blare v. Huskey Injection Molding Sys.
Boston, Inc., 646 N.E.2d 111, 114 (Mass. 1995).  The plaintiff
first has the burden of showing, by a preponderance of the
evidence, a prima facie case of discrimination.  Id. at 115.  The
plaintiff establishes a prima facie case of race discrimination in
connection with his suspension and termination by showing (1) he is
a member of a protected class; (2) he performed his job at an

acceptable level; (3) he was terminated; and (4) that the employer filled his position with another individual with qualifications similar to his own. Id. In response to the plaintiff's prima facie case for discrimination, the employer can rebut the presumption by articulating a legitimate, nondiscriminatory reason for its employment decision. Wheelock College v. Massachusetts Comm'n Against Discrimination, 355 N.E.2d 309, 313 (Mass. 1976).

Once the defendant articulates a nondiscriminatory reason for the employment decision, the plaintiff must show by a preponderance of the evidence that the defendant's reasons are pretextual or that the defendant's real motivation was discriminatory. Blare, 646 N.E.2d at 117. In order to show pretext, the plaintiff must be able to demonstrate that similarly-situated employees outside of his protected class were treated differently. Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1309 (Mass. 1997). Summary judgment for the defendant is thus inappropriate if a plaintiff has offered evidence sufficient to support a determination that the employer's reason was pretextual.

The central question in determining this discrimination claim is whether Barton Services's stated reason for Windross being disciplined and later suspended and terminated following his unilateral shift switch is pretextual. The company's asserted reason is that Windross refused to meet with Ordman. In other words, we must determine if the employer's statements concerning

Windross's insubordination masked discrimination. The district court found that Windross's disciplining for switching shifts was not pretextual. It is undisputed that switching shifts with another security officer without first getting permission from a supervisor is a violation of Barton Services's policies. Although there is evidence to show that shift switching had occurred within the organization, there is no evidence that other security officers who failed to obtain permission before switching shifts were not disciplined. Accordingly, the disciplining of Windross was not a pretext for discrimination. See Matthews, 686 N.E.2d at 1309.

Likewise, Windross's suspension and termination for refusing to meet with Ordman's orders were not pretextual. Barton Services's written company policy states that "[w]illful misconduct, including insubordination" provides grounds for "immediate termination." It was not up to Windross to decide if and when to meet with Ordman, and Windross does not deny that he twice refused Ordman's orders to speak with her. When Windross refused to meet with Ordman for a second time, the company was justified in terminating Windross. See Tate v. Dep't of Mental Health, 645 N.E.2d 1159, 1164 (Mass. 1995) (summary judgment justified when deaf social worker failed to establish pretext under Title VII and Massachusetts General Laws chapter 151B when fired for insubordination); see also Williams, 220 F.3d at 19 (summary judgment justified when male employee failed to establish case

-10-

under Title VII when he was fired for insubordination); Holloway v. Thompson Island Outward Bound Educ. Center Inc., 492 F. Supp. 2d 20, 24-25 (D. Mass. 2007) (insubordination is a legitimate ground for termination of an employee under Title VII).  Moreover, while the record gives examples of Windross's noting the misconduct of other employees, there is no evidence that other security officers who twice failed to follow the similar directives of their managers would not be disciplined as a result.  See Matthews, 686 N.E.2d at 1309.  The district court did not err in its concluding that there was no evidence of pretext in Windross's disciplining, suspension, or termination.  Thus, summary judgment in favor of Barton Services is appropriate.

## C.  Leave to Amend

Windross also contends that the district court erred when it denied his motion to add a count for hostile work environment.  We review the district court's decision to deny a motion to amend under Federal Rule of Civil Procedure 15 for abuse of discretion, and we will defer to the district court if any adequate reason for the denial is apparent from the record.  Grant v. News Group Boston, Inc., 55 F.3d 1, 5 (1st Cir. 1995).  As outlined above, a complainant is required to file his lawsuit within three years of the alleged discriminatory act or acts giving rise to the claim. Mass. Gen. Laws ch. 151B, § 9.

-11-

In this case, adequate reason for denial of Windross's motion to amend and motion for reconsideration is apparent. Windross did not move to amend his complaint until July 20, 2007. While we recognize that Windross's case was removed to federal court in April 2007, the hostile work environment claim was, nonetheless, raised almost exactly four years after his employment with Barton was terminated. As a result, Windross's hostile work environment claim was time-barred and the district court thus acted within its discretion in denying his motion to amend and motion for reconsideration. See Mass. Gen. Laws ch. 151B, § 9. The district court did not err in denying Windross's motion to amend and motion for reconsideration.

## III. Conclusion

For the foregoing reasons, we affirm the district court's grant of summary judgment.