Curran, Dennis J., J.
The defendant Dailybreak/CP, LLC has filed amotion to dismiss, that has since been converted into a motion for summary judgment. It asserts that, under the language of its Asset Purchase Agreement with Dailybreak Inc., it is not its successor-in-interest. Therefore, Dailybreak/CP argues that it cannot be liable to Mr. Pontacolini for unpaid wages.
For the reasons that follow, the defendant’s motion for summary judgment is DENIED.
FACTUAL BACKGROUND
We take, as we must, all evidence and reasonable inferences drawn from that evidence, in the light most favorable to the non-moving party (here, Mr. Pon-tacolini).
On June 13, 2013, Nicholas Pontacolini entered into an employment agreement with Dailybreak, Inc. under which he was hired as its Regional Sales Director. The agreement specified the terms of Mr. Pontacolini’s employment and his duties, and detailed a compensation plan which included both a semimonthly base salary of $5,000 and a commission- *298 based salaiy. The latter was based on a quarterly sales plan, and allowed Mr. Pontacolini to earn up to $105,000.
Under the agreement, Mr. Pontacolini began his employment as Regional Sales Director with Dailybreak, Inc. on July 9, 2013. However, the relationship between the two parties quickly unraveled. By October 7, 2013, Dailybreak, Inc. no longer employed Mr. Pontacolini. The parties offer conflicting reasons for the dissociation. Dailybreak, Inc. stated that Mr. Pontacolini resigned from his position, but Mr. Pontacolini claims that Dailybreak, Inc. wrongly terminated him after he gave notice he would be moving to Portland, Maine. After the separation, Mr. Pontacolini, under the impression he was entitled to commissions earned during the course of his employment, attempted to settle the issue with Dailybreak, Inc. but that effort bore no fruit. Dailybreak, Inc. denied that it owed Mr. Pontacolini any compensation for his work, and communications between the parties broke down.
Mr. Pontacolini subsequently filed a Non-Payment of Wage and Workplace Complaint with the Office of the Attorney General’s Fair Labor Division, alleging that Dailybreak, Inc. wrongfully withheld $13,125 in sales commission owed to him under the employment agreement. After review, the Fair Labor Division authorized Mr. Pontacolini to pursue his case against Dailybreak, Inc. through a “private right of action.” That process took some months to complete.
On September 4, 2014, however, Dailybreak, Inc. and Dailybreak/CP, LLC[1] entered into an Asset Purchase Agreement. In relevant part, the Agreement stated that Dailybreak, Inc. agreed to sell all of its assets—including the rights to the name “Dailybreak” and its website, “dailybreak.com”—to Dailybreak/CP for $175,000 plus earned payouts. Dailybreak/CP also agreed to assume specific liabilities of Dailybreak, Inc., to operate the business in its ordinary course and as a separate business unit apart from the other businesses of Connelly Partners, to fund the operating deficit of Dailybreak, Inc. up to $825,000, and to sublease Dailybreak, Inc.’s Boston office. Furthermore, the Agreement was conditioned on Dailybreak, Inc.’s termination of all employees, but curiously required Dailybreak/CP to hire those same employees— including Chief Executive Officer John Federman, Chief Technology Officer Jared Stenquist, Chief Marketing Officer Nancy Liberman, and co-founder Boris Revsin—at the same salaiy.
On May 13, 2015, Mr. Pontacolini commenced this action under G.L.c. 149, §148 for the unpaid commissions owed to him. He alleges that Dailybreak/CP is a successor-in-interest to Dailybreak, Inc., and is therefore liable for unpaid wages due him.
DISCUSSION
A court should grant summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to a judgment as a matter of law. Bank of N.Y. v. Bailey, 460 Mass. 327, 331 (2011). The party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact on every relevant issue, even if the party would not have the burden on the issue if the case were to go to trial. Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 127 (1997). This burden may be satisfied by affirmative evidence negating an essential element of the opposing party’s case or by establishing that proof of that element is unlikely to be forthcoming at trial Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991).
Massachusetts adheres to the corporate law principle that the liabilities of a selling predecessor corporation are not imposed on the successor corporation which purchases its assets unless: 1) the successor expressly or impliedly assumes liability of the predecessor; 2) the transaction is a de facto merger or consolidation; 3) the successor is a mere continuation of the predecessor; or 4) the transaction is a fraudulent effort to avoid liabilities of the predecessor. Cargill, Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass 356, 359 (1997). In determining whether to characterize an asset sale as a de facto merger, courts consider: 1) whether there is a continuation of the enterprise of the seller corporation so that there is continuity of management, personnel, physical location, assets, and general business operations; 2) whether there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller coiporation so that they become a constituent part of the purchasing corporation; 3) whether the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and 4) whether the purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.[2] Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 557 (2008). Finally, no single fact is necessary or sufficient to establish a defacto merger. Id.
In support of its motion for summary judgment, Dailybreak/CP thrusts forward its Asset Purchase Agreement with Dailybreak, Inc., alleging that the Agreement has immunized itself from liability as against Mr. Pontacolini’s claim. However, viewing the Agreement in the light most favorable to Mr. Pon-tacolini, this language is insufficient to satisfy Dailybreak/CP’s burden that it is not a successor-in-interest to Dailybreak, Inc.
First, the Agreement created a continuity of management, personnel, location, assets, and business operations between Dailybreak/CP and Dailybreak, Inc. The Agreement between the parties was for the *299 sale of all Dailybreak, Inc.’s assets, allowing Dailybreak/CP to continue the operations of the business in the same manner as before the Agreement. Further, it also called for Dailybreak, Inc. to terminate all of its employees, but required Dailybreak/CP to extend employment contracts to those employees, including the former CEO and several other C-level employees. The Agreement also required Dailybreak/CP to sublease Dailybreak, Inc.’s office space in Boston.
Second, the Agreement itself is enough to establish that Dailybreak, Inc. has ceased its operations and liquidated itself entirely. See Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 559 (2008) (imposing successor liability where the seller had no offices, employees, or operating assets after the sale). After the sale, Dailybreak, Inc. was left with no assets, no office space, and no employees. It no longer owned either Dailybreak.com, its client and customer list, or any intellectual property associated with the business. Moreover, Dailybreak/CP has not put forth any evidence that Dailybreak, Inc. has continued any of its prior business operations, leading to the conclusion that Dailybreak, Inc. has effectively been dissolved.
Finally, the Agreement called for Dailybreak/CP to assume certain liabilities and customer contracts. The assumed liabilities included accounts payable to several banks, insurance companies, and media groups. The assumed contracts included “core” client contracts, which “represent the lion’s share of all revenue.” Based on the assumption of these certain liabilities and contracts, Dailybreak/CP has not sufficiently negated Mr. Pontacolini’s claim that it assumed the obligations necessary for the uninterrupted continuation of normal business operations of Dailybreak, Inc. See Cargill Inc. v. Beaver Coal & Oil Co., Inc., 424 Mass. 356, 362 (1997) (finding sufficient evidence of successor liability where the buyer agreed to pay certain creditors of the seller and assumed the seller’s executory contracts).
In short, Dailybreak/CP has not established sufficient evidence or facts to satisfy its burden that it is not a successor-in-interest to Dailybreak, Inc.
ORDER
For these reasons, the defendant’s motion for summary judgment is DENIED.

 Dailybreak/CP, LLC is a Massachusetts limited liability company, and was organized on August 28, 2014, eight days before the Asset Purchase Agreement was made. Certificate of Organization: Dailybreak/CP, LLC, SECT OF THE COMMONWEALTH (Aug. 28, 2014, 2:55 P.M.), http://corp.sec.state.ma.us/CorpWeb/CorpSearch/CorpS earchViewPDF. aspx.

 The second factor will not be considered because the defendant has presented no evidence regarding the continuity of shareholders resulting from the Asset Purchase Agreement.