Connolly, J.
The plaintiff/appellant, the Trustees of Health and Hospitals of the City of Boston, Inc. (“THH”), brought this action, pursuant to G.L.c. 30A, §14, G.L.c. 151B, §6 and Standing Order 1-96 of the Superior Court, challenging a decision of the Massachusetts Commission Against Discrimination (“the MCAD”). The defendant/appellees, the MCAD, Gloria Coney (“Coney”), Veronica Higginbottom (“Higginbottom”), Betty Smith (“Smith”), Belinda Chambers (“Chambers”) and Marlene Hinds (“Hinds”) (collectively “the defendants”), filed a Motion for Judgment on the Pleadings and for Enforcement of the Final Decision and Order of the Full Commission of the MCAD with one modification.[2] Without opposing the defendants’ motion, THH subsequently filed its own Motion for Judgment on the Pleadings and asked the court to review, set aside and/or vacate the MCAD’s Final Decision and Order on grounds that the decision is inconsistent with one or more of the statutory requirements of G.L.c. 30A.[3] For the reasons set forth below, the defendants’ Motion for Judgment on the Pleadings is DENIED, and THH’s Motion for Judgment on the Pleadings is ALLOWED.

BACKGROUND

[4]

After a loss of adequate funding in 1994, THH laid off a number of employees, including the defendants, Coney, Higginbottom, Smith, Chambers and Hinds. As a result of how THH handled their layoffs, in August 1994 all five women filed complaints with the MCAD alleging both race and sex discrimination. Specifically, the five African-American women asserted THH subjected them to differential treatment during the layoff, which took place from July 19-21, 1994.
On May 4-7, 1998, and on May 27, 1998, a single hearing commissioner of the MCAD, Douglas T. Schwartz (“Schwartz”), held a public hearing, after which he drafted a thirty-three page decision and concluded THH discriminated against the five complaints in violation of G.L.c. 15 IB, §4, by subjecting them to differential treatment during a layoff on the bases of their race and sex. He awarded each of the five complainants emotional distress damages plus interest, attorneys fees and costs.
In making his determination, Schwartz specifically found and concluded:
All five complainants worked for THH’s Healthy Baby/Healthy Child Program (“HBHC”) at its Hyde Park location.
At the time of the layoff, Hinds worked full-time as the Record Room Supervisor. Her responsibilities included keeping a sign-out log of charts so that she would know which employees possessed client records.
At the time of the layoff Chambers worked full-time as a Health Advocate.
At the time of the layoff, Coney was Program Coordinator, a full-time employee and union member with non-supervisory duties, including collecting statistics related to the program.
At the time of the layoff, Higginbottom was a full-time Clinical Social Worker and a union member.
At the time of the layoff, Smith was Program Coordinator, a full-time, management-level, non-union employee.
At the time of the layoff, Alicia Hill (“Hill”) worked as a secretary at THH’s headquarters in Boston. She was not African-American.
At the time of the layoff, Christopher Navin (“Navin”), a Caucasian male, worked at the Hyde Park site as Senior Program Development Specialist. He also used office space at the corporate headquarters and was permitted to take work home with him. Navin was responsible for reviewing and making recommendations regarding changes in the organizational structure of HBHC and was a permanent part-time employee of HBHC, with no specific limit on the duration of his employment.
*324 On July 19, 1994, at 4:30 p.m., Coney and Hinds were told they were being laid off immediately and instructed to vacate the building by 5:00 p.m. The two women were monitored as they collected and packed their belongings. Coney had no opportunity to say good-bye to co-workers that day. She did, however, receive permission to return the following day to finish packing her belongings and was again monitored.
On the morning of July 20, 1994, Higginbottom, Chambers and Smith were told they were laid off immediately and monitored as they packed their belongings.
On July 20, 1994, Hill was laid off and was not monitored.
Approximately one month prior to the layoffs, Navin was informed that he would be laid off. On July 19 or 20, 1994, Navin was called at home and advised that he would be laid off the following day. He requested and was granted permission to come to the office in two or three days to pick up the termination notice instead. Navin went to the office on July 21st and picked up his layoff notice. He was not monitored as he cleared out his desk and was permitted to walk around and say good-bye to co-workers.
In order to make out a prima facie case of discrimination, each complainant had to show: (1) she was a member of a protected class; (2) she suffered an adverse action with respect to a term, condition or privilege of her employment; (3) she had performed acceptably in connection with the aspect of employment in which .the adverse action was taken; and (4) she was treated less favorably with respect to that adverse action than similarly situated coworkers who were not members of her protected class. See Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995), citing Texas Dep’t of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).
“An employer’s actions attendant to a layoff may constitute terms, conditions, or privileges of employment . . .” and “the actions complained of are sufficiently consequential to be actionable.” (Decision of Hearing Commissioner, p. 20). “Without notice, complainants were called into a meeting, discharged, told to pack their belongings and leave the building that day, and were closely and aggressively monitored by management as they packed their personal items . . . there was no evidence that anything similar had ever happened before in complainants’ workplace.” {Id. at 21.) “An affidavit indicated that a single discharged employee had once been observed as he packed his belongings, but that occurred at a different workplace and appears not to have been a ‘layoff situation.” {Id. n.l.) Complainants established “they were treated adversely in the manner in which the layoff was carried out.” (Id. at 21.)
Complainants established the third element of their prima facie case because they “did all that was asked of them in connection with the layoffs.” (Id.)
The final element of the complainants’ prima facie case is a close question. “It is clear that they were treated less favorably than Hill and Navin, who were not African-American. Neither Hill nor Navin was monitored as each packed their belongings. [Navin] was given advance notice of his layoff and even permitted to select the day on which presentation of the layoff notice would occur ... He was permitted to say good-bye to co-workers at his own pace. None of the complainants were afforded these privileges.” (Id. at 21-22).
“A more difficult determination is whether either Hill or Navin is similarly situated to complainants. In order to show that two employees are similarly situated for the purposes of measuring disparate treatment, complainant must show that the employees are ‘reasonably comparable’ and their situations ‘sufficiently similar.’ ” (Decision of Hearing Commissioner, p. 22, quoting Dartmouth Review v. Dartmouth College, 889 F.2d 13, 19 (1st Cir. 1989)). ‘The test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated . . .Exact correlation is neither likely nor necessary, but the cases must be fair congeners. In other words, apples should be compared to apples.” (Id.).
“Although there appears to be no precedent establishing a test for determining whether employees are ‘similarly situated’ with respect to layoff procedures, courts recognize that the analysis depends on the type of employment action that is alleged to be discriminatory. See Smith v. Stratus Commuter, Inc., 40 F.3d 11, 17 (1st Cir. 1994) (“Thus, for us to compare [the complainant’s] treatment with that of terminated or transferred male executives in a meaningful way, [the complainant] would have to show that she was similarly situated to those men in terms of performance, qualifications, and conduct”). For comparison in a disparate treatment case, employees need to be similarly situated ‘in all relevant aspects.’ Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 129 (1997), quoting Dartmouth Review, 889 F.2d at 19, quoting Smith v. Monsanto Chemical Co., 770 F.2d 719 (8th Cir. 1985), cert, denied, 475 U.S. 1050 (1986).” (Id. at 23.)
“Here, the ‘relevant aspects’ to consider are whether the employees were similarly situated with respect to their treatment during the layoffs.” (Id.) A non-African-American male’s different duties, part-time schedule and permission to work from home or from two other offices, only one of which was the *325 Hyde Park location, were factors that had no bearing on his treatment during the layoff and whether he was similarly situated to the five complainants. (Id. at 23-24.)
“Navin worked for the same employer as complainants, in the same public health program and with an office in the same place as the complainants. The fact that Navin worked part time and not always at the HBHC offices does not distinguish him sufficiently to exclude him as a fair comparator: he was scheduled to be laid off at the same time as complainants, in the same place and for the same reason. I conclude that Navin was similarly situated to complainants in all relevant aspects and that it is fair to compare the circumstances of his layoff with those of complainants.” (Decision of Hearing Commissioner, p. 24.)
Hill was not similarly situated because she worked exclusively, and was laid off at, an entirely different location. (Id. at 25.)
THH filed an appeal to the full commission of the MCAD, asserting Schwartz applied an incorrect legal standard and incorrect factors for determining whether other employees were similarly situated to the complainants in order to make out a prima facie case of race and sex discrimination. THH also contested the award of interest, attorneys fees and costs to the complainants.
Eight years after the complaint was originally filed, on May 20, 2002, the full commission of the MCAD issued a final decision and affirmed its earlier decision, stating THH discriminated against Coney, Higginbottom, Smith, Chambers and Hinds on the bases of race and sex by subjecting them to differential treatment during a layoff. The full commission found no material errors of fact or law and stated Schwartz’s conclusions were supported by substantial evidence in the record; however, the commission modified the damages award. The MCAD reversed the award of interest to the complainants, concluding THH was an instrumentality of the Commonwealth and thus not subject to interest payments unless expressly authorized by statute, but affirmed the award of attorneys fees and costs.
On June 19, 2002, THH filed the current action asking for judicial review of the MCAD’s Final Decision and Order.

DISCUSSION

I. Standard of Review
In this case, THH asserts the Final Decision and Order of the Full Commission of the MCAD was unsupported by substantial evidence, contrary to unrebutted evidence, based on errors of law and arbitrary and capricious.
Massachusetts General Laws chapter 30A, §14(7) provides, in pertinent part:
The court may affirm the decision of the agency, or remand the matter for further proceedings before the agency; or the court may set aside or modify the decision, or compel any action unlawfully withheld or unreasonably delayed, if it determines that the substantial rights of any party may have been prejudiced because the agency decision is—
(a) In violation of constitutional provisions; or
(b) In excess of the statutory authority or jurisdiction or the agency; or
(c) Based upon an error of law; or
(d) Made upon unlawful procedure; or
(e) Unsupported by substantial evidence; or
(f) Unwarranted by facts found by the court on the record as submitted or as amplified under paragraph (6) of this section, in those instances where the court is constitutionally required to make independent findings of fact; or
(g) Arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.
G.L.c. 30A, §14(7). A court “should not intrude lightly within the agency’s area of expertise. [An agency’s] decisions are not to be overturned unless they are contrary to law or unreasonable, arbitrary, whimsical, or capricious.” Brookline v. Comm’r of the Dep’t of Envtl. Quality Eng’g, 398 Mass. 404, 410 (1986) (internal citations omitted). As the moving parly, the plaintiff carries the burden of establishing the agency’s decision was invalid; Bagely v. Contributory Ret Appeal Bd., 397 Mass. 255, 258 (1986); and that his substantial rights were prejudiced by the agency’s error. Catlin v. Bd. of Registration of Architects, 414 Mass. 1, 6 (1992).
Pursuant to G.L. 30A, § 14, the reviewing court shall examine the record of proceedings from the agency decision(s) and determine whether, based upon the record and considering the “experience, technical competence and specialized knowledge of the agency,” the agency’s decision was appropriate. See G.L.c. 30A, §14(5)-(7); Flint v. Comm’r of Pub. Welfare, 412 Mass. 416, 420 (1992). Under this statute, the court may set aside a commission’s decision only on those grounds set out in §14(7)(a) through (g). Olde Towne Liquor Store, Inc. v. Alcoholic Beverages Control Comm’n, 372 Mass. 152, 153 n.2 (1977). In its review, the court must determine whether the agency decision was supported by substantial evidence or based upon an error of law. G.L.c. 30A, §§14(7)(e), 14(7)(c); Embers of Salisbury, Inc. v. Alcoholic Beverages Control Comm’n, 401 Mass. 526, 528 (1988).
II. Error of Law
The heart of this dispute is the proper application of the legal standard and factors used in determining whether employees are “similarly situated” in order to make out a prima facie case of race and sex discrimination.
*326 Upon careful review of the available case law, the full commission of the MCAD concluded that “[although there appears to be no precedent establishing a test for determining whether employees are ‘similarly situated’ with respect to layoff procedures, courts recognize that the analysis depends on the type of employment action that is alleged to be discriminatory.” Thus, the MCAD considered whether the employees were similarly situated with respect to their treatment during the layoffs as the “relevant aspects.” Ultimately, the MCAD concluded that Navin was similarly situated to the complainants because he “worked for the same employer as complainants, in the same public health program and with an office in the same place as the complainants.” The MCAD also focused on the fact that he was scheduled to be laid off at the same time as complainants, in the same place and for the same reason. The commission considered Navin’s part-time work status and his multiple work locations, but found these facts failed to distinguish him sufficiently to exclude him as a fair comparator. The MCAD, however, found Hill was not similarly situated because she worked exclusively, and was laid off, at an entirely different location.
THH argues the MCAD used an incorrect, and substantially lower, legal standard for determining whether employees are similarly situated in a disparate treatment case and misstated the factors to be considered in determining whether employees are similarly situated. Application of this lower standard allowed the MCAD to improperly conclude Navin was similarly situated to the five complainants simply because he was involved in the same layoff. THH also notes that the MCAD erred in finding Hill was not similarly situated based solely on the location of her office.
While no Massachusetts case specifically addresses the issue of whether employees terminated in a layoff at multiple company locations are similarly situated, the Supreme Judicial Court has addressed the issue of whether employees are similarly situated in termination situations, and the First Circuit Court of Appeals has addressed the issue during a layoff at one location. Matthews, 426 Mass, at 131-34; Mack v. Great Atlantic & Pac. Tea Co., Inc., 871 F.2d 179, 180 (1st Cir. 1989).[5] The principles adopted by the Court in Matthews are applicable here. The Court stated “(w]e have not previously considered what evidence a plaintiff must produce to show that two individuals are similarly situated for purposes of proving differential treatment, and thus discrimination, in violation of G.L.c. 151B. We adopt the approach taken by Federal courts under Title VII . . . the plaintiff must ‘identify and relate specific instances where persons similarly situated ‘in all relevant aspects’ were treated differently.’ ” Id. at 129, quoting Dartmouth Review, 889 F.2d at 19, quoting Monsanto Chem Co., 770 F.2d at 723. The Court further noted “the plaintiff must identify other employees to whom he is similarly situated ‘in terms of performance, qualifications and conduct, without such differentiating or mitigating circumstances that would distinguish their situations.’ ” Matthews, 426 Mass, at 130, quoting Stratus Computer, Inc., 40 F.3d at 17 (internal citation omitted).
In assessing an employee’s performance, qualifications and conduct and comparison to other employees, courts consider the reason for an employee’s termination and whether an employee performed the same job or had a similar job title or role within the company to those proffered comparators. See Smith, 40 F.3d at 17 (finding for “meaningful comparison” because plaintiff was a vice president her treatment must be compared to that of other terminated or transferred male executives). Consequently, a non-American-born guard fired for falling asleep on the job, being out of uniform and engaging in assaultive behavior must be compared to other American-born guards, who were not fired or punished for committing the same acts. Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 114 (2000). See also Holland v. BLH Electronics, Inc., 58 Mass.App.Ct. 678, 679-80, 683 (2003) (motion judge erred in failing to consider evidence that African-American plaintiff and white female were similarly situated where the two women were hired the same day, to do the same job, received the same training and sat five feet apart doing identical work); Greene v. New England Deaconess Assoc., Inc., Civil No. 05407 (Middlesex Super.Ct. October 15, 2002) (Billings, J.) (noting female supervisor met burden at summary judgment of showing she was similarly situated to a male supervisor also accused of sexual misconduct). But see Gerety v. Commonwealth of Mass., Civil No. 00540 (Suffolk Super.Ct. October 21, 2002) (Fabricant, J.) (finding female employee not similarly situated to male employee where his personnel file specified no reason for his salary reallocation, and his salary was less than half of the plaintiffs); Jimenez v. Bancomercio de Puerto Rico, 174 F.3d 36, 42 (1st Cir. 1999) (finding two employees not situated similarly in all relevant aspects where “no prudent person could conclude that [plaintiffs] and [proposed comparator’s] roles were sufficiently equivalent that failure to dismiss [the latter] bore on whether firing [the plaintiff] was based on pretext and actually resulted from age animus”); Mack, 871 F.2d at 182 (affirming summary judgment for defendant in race and sex discrimination suit where no sufficient evidence existed that other similarly credentialed grocery clerks were treated more favorably than plaintiff when defendant reduced its staff by layoff; plaintiffs attempt at comparison to man in different job category failed); Cohen v. Albany Int’l Research Co., No. 97-10262-NG (D.Mass. December 30, 1998) (Gertner, J.) (holding female employee not similarly situated to male employee where they worked in same work group, but had different positions; they had different job-related responsibilities; one held a higher employment level and was eligible for bonuses; and *327 the circumstances involving their performance problems was different).
The courts also consider a particular policy under which a company terminates an employee and whether the employee’s position was temporary or permanent. Thus, where an employee is terminated because he committed an offense in violation of company policy, he must be compared to other employees who were terminated for violating the same offense under the same policy. Matthews, 426 Mass, at 131-34 (other employees disciplined or terminated under different policies or for other offenses not similarly situated). Additionally, a genuine issue of fact exists as to whether one employee is similarly situated to another employee where the first is hired permanently and holds his position for ten years, and the other employee is hired specifically for a project and once it is completed will be terminated. Welstead v. Sturdy Mem’l Hosp, Civil No. 00924-A (Plymouth Super.Ct. November 29, 2000) (Chin, J.).
As outlined above, the Final Decision and Order of the full commission of the MCAD explains in detail its review of the record, what evidence it considered and found credible and what case law it relied upon in making its decision. After reviewing the record, the court concludes THH established that, in assessing whether the complainants were similarly situated to two other employees who were laid off at the same time, the Final Decision and Order of the full commission of the MCAD was based upon an error of law. The case law makes clear that the defendants and Navin were not similarly situated. Navin held a distinctly different role with HBHC than the five defendants. He had a different job title and different responsibilities. Unlike some of the defendants, Navin was not a supervisor, and he had no contact with HBHC clients. Navin worked part-time, rather than full-time, and he could work from multiple locations, including his home if he so desired.
Consequently, the fact that THH may have approached Navin differently during the layoff does not support an argument for discrimination. Rather, it suggests that due to the difference in Navin’s position, responsibilities, and conduct, THH did not think the circumstances warranted the same action. While the court empathizes with the defendants and notes that the manner in which they were laid off was unfair, “Chapter 151B ‘does not grant relief to a plaintiff who has been discharged unfairly, even by the most irrational of managers, unless the facts and circumstances indicate that discriminatory animus was the reason for the decision.’ ” Matthews, 426 Mass, at 134, quoting Stratus Computer, Inc., 40 F.3d at 16.

ORDER

For the foregoing reasons, it is hereby ORDERED THH’s Motion for Judgment on the Pleadings is ALLOWED, and the defendants’ Motion for Judgment on the Pleadings is DENIED.

The defendants additionally ask the court to review, set aside and/or vacate that portion of the MCAD’s Final Decision and Order striking the award of interest. This request, however, is moot because the MCAD made an error of law.

Like the plaintiff, the defendants filed no opposition to THH’s Motion. Additionally, THH moves the court for a Stay of Enforcement of the Final Decision and Order of the Full Commission of the MCAD Pending Judicial Review, but again this request is moot based on the court’s decision and order.

“For purposes of the court’s consideration of the [rule 12(c)] motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false.” Minaya v. Mass. Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984), quoting 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure §1368, at 691 (1969).

While the defendant had stores in multiple locations, the facts in the case do not indicate that the plaintiff and the proposed comparator worked at different locations.